******************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

# HUDSON CITY SAVINGS BANK *v.*
# CHARLES D. HELLMAN ET AL.
## (AC 46642)

Elgo, Suarez and Clark, Js.

*Syllabus*

The defendant homeowners, C and H, appealed from the trial court's judgment of foreclosure by sale rendered for the substitute plaintiff, M Co. The defendants executed and delivered a note payable to B Co., which endorsed the note in blank and assigned the note and mortgage to the plaintiff, H Co., which later merged into M Co. B Co. remained the servicer of the loan. The defendants claimed, inter alia, that the trial court improperly denied their motion for a continuance in order to conduct further discovery. *Held*:

The trial court did not abuse its discretion in its discovery rulings or in denying the defendants' motion for a continuance, as the defendants failed to seek timely remedies available under our rules of practice and their request for relief on the eve of trial was untimely.

The trial court correctly determined that M Co. had sustained its burden of proof, as there was sufficient evidence to establish that M Co. had authorized B Co. to act on its behalf.

The trial court's conclusion that M Co. had established that a notice of default had been sent to the defendants by first class mail was not clearly erroneous, as it was supported by ample evidence.

The trial court did not abuse its discretion by excluding certain testimony as to conversations between C and agents of B Co. as inadmissible hearsay, as the defendants failed to establish the scope of the authority or the identity of the purported agents of B Co.

This court declined to address the defendants' inadequately briefed claim that the trial court improperly overruled the defendants' objection to testimony that addressed certain business practices.

The trial court's sua sponte comments as to the sufficiency of M Co.'s evidence and regarding testimony from a witness for M Co., although unnecessary, did not rise to the level of judicial bias, as the comments were situated within the context of a scheduling concern and did not rise to the level of being so egregious as to demand a reversal of the court's judgment pursuant to the plain error doctrine.

The trial court did not abuse its discretion in failing to grant the defendants' equitable relief under the doctrine of unclean hands, as the defendants offered little evidence to establish that special defense.

Argued October 16, 2024—officially released July 29, 2025

*Procedural History*

Action to foreclose a mortgage on certain real property of the named defendant et al., and for other relief, brought to the Superior Court in the judicial district of Stamford-Norwalk, where Manufacturers and Traders Trust Company was substituted as the plaintiff; thereafter, the court, *Spader, J.*, sustained the substitute plaintiff's objections to discovery requests by the named defendant et al.; subsequently, the court, *Genuario, J.*, denied the motion for a continuance and request for adjudication of the discovery issues filed by the named defendant et al.; thereafter, the case was tried to the court, *Genuario, J.*; judgment of foreclosure by sale; subsequently, the court, *Genuario, J.*, sustained the substitute plaintiff's objection to the motion to open the evidence filed by the named defendant et al. and denied the motion to reargue filed by the named defendant et al., and the named defendant et al. appealed to this court. *Affirmed.*

*Charles D. Hellman*, self-represented, for the appellants (named defendant et al.).

*Pierre-Yves Kolakowski*, for the appellee (substitute plaintiff).

*Opinion*

ELGO, J. The defendants Charles D. Hellman and Holly H. Hellman appeal from the judgment of foreclosure by sale rendered by the trial court in favor of the substitute plaintiff, Manufacturers and Traders Trust Company (M&T).[1] We note at the outset that this is the

_____

[1] For convenience, we refer to Charles D. Hellman and Holly H. Hellman individually by first name and collectively as the defendants in this opinion. Charles is a licensed attorney, and he represents both himself and Holly in this matter. Bank of America, N.A. (BANA), was also named as a defendant in the complaint for its claimed interest in the property by way of a mortgage dated October 28, 2002.

Hudson City Savings Bank (HCSB) merged with M&T in 2015, which was substituted as the plaintiff, over the defendants' objection, in 2017. For clarity we will refer to HCSB and M&T by name when necessary. Any

second time the parties have appeared before this court on this matter. In *Hudson City Savings Bank* v. *Hellman*, 196 Conn. App. 836, 231 A.3d 182 (2020), we reversed the summary judgment rendered by the trial court in favor of the plaintiff and remanded the case for further proceedings consistent with our opinion. In *Hellman*, we concluded that summary judgment had been granted improperly because a genuine issue of material fact existed as to whether the plaintiff had provided the defendants with the required EMAP notice.[2] Id., 849. On remand, the trial court addressed the EMAP notice requirement, fully litigated the matter and rendered a judgment of foreclosure by sale. On appeal, the defendants claim that the trial court improperly (1) denied their motion for a continuance in order to conduct further discovery, (2) deemed sufficient the evidence offered by the plaintiff, (3) admitted testimony offered by the plaintiff and excluded testimony offered by the defendants, (4) admitted the testimony of a witness due to judicial bias, and (5) failed to grant the defendants equitable relief under the doctrine of unclean hands. We affirm the judgment of the trial court.

In the prior appeal, this court set forth the following facts and procedural history. "On May 22, 2007, the defendants executed and delivered a note payable to Bank of America, N.A. (BANA), in the original principal amount of $532,000. The loan was secured by a mortgage deed on real property located in Westport, executed that same day, and recorded on the Westport land records. BANA endorsed the note in blank. The defendants have been in default on the note and mortgage since September, 2011.

---

reference to the plaintiff in this opinion refers to M&T as the substituted plaintiff in the foreclosure action.

[2] "EMAP stands for the Emergency Mortgage Assistance Program. General Statutes §§ 8-265cc through 8-265kk." (Internal quotation marks omitted.) *7 Germantown Road, LLC* v. *Danbury*, 351 Conn. 169, 185 n.8, 329 A.3d 927 (2025).

"On January 7, 2013, BANA assigned both the note and the mortgage to [Hudson City Savings Bank (HCSB)], with that assignment subsequently recorded on the Westport land records on January 14, 2013. On June 2, 2013, BANA, as the servicer for the note, sent a letter to the defendants notifying them of their rights under the mortgage relief program pursuant to the provisions of General Statutes §§ 8-265cc through 8-265kk. On June 21, 2013, BANA sent a letter to the defendants providing notice that the loan was in serious default and information with respect to the total amount required to cure the default. The notice of default also provided that, should the default not be cured on or before July 31, 2013, the mortgage payments would be accelerated.

"When no payments followed, HCSB commenced the present foreclosure action against the defendants on December 4, 2013. HCSB filed the operative complaint, its third revised complaint, on June 29, 2016. On January 20, 2017, the defendants filed an answer that included thirteen special defenses alleging, inter alia, that (1) HCSB lacked the right or capacity to maintain the action as a corporation, (2) HCSB lacked standing, (3) the assignment of the note and mortgage was not actual and bona fide, (4) BANA's conduct with respect to the mortgage constituted unclean hands, and (5) HCSB was estopped from enforcing the mortgage.

"On August 4, 2017, HCSB moved for summary judgment as to liability, arguing that there was no genuine issue of material fact with respect to the defendants' liability on the note and mortgage. Attached to that motion was the affidavit of Regina Rhodes. In the Rhodes affidavit, the affiant averred, in relevant part, that (1) she was authorized to sign the affidavit on behalf of HCSB as an assistant vice president for BANA, (2) BANA maintained records for the loan in question, and part of her responsibilities was to be familiar with the types of records maintained by BANA in connection

with the loan, (3) she had personal knowledge of BANA's procedures for creating the records, (4) as of May 22, 2007, the defendants owed $532,000 as evidenced by the note payable to BANA, (5) on or before November 25, 2013, HCSB 'became and at all times since then has been the party entitled to collect the debt evidenced by the [n]ote and is the party entitled to enforce the [m]ortgage securing the debt,' (6) the note and mortgage are in default for nonpayment as of September 1, 2011, (7) the defendants were given notice of default, 'by certified mail, postage fully prepaid,' on June 21, 2013, and (8) HCSB 'directly or through an agent, has possession of the promissory note. [HCSB] is the assignee of the security instrument for the referenced loan.' Accompanying the Rhodes affidavit were copies of the note, a June 21, 2013 notice of default addressed to the defendants, a quitclaim deed of the property, the mortgage, the assignment of the note and mortgage from BANA to HCSB, and a June 2, 2013 notice addressed to the defendants that contained information pursuant to §§ 8-265cc through 8-265kk.

"After being granted an extension of time to respond, the defendants filed their opposition to HCSB's motion for summary judgment on October 27, 2017. In support of their opposition, the defendants submitted the affidavit of Charles . . . . In that affidavit, Charles . . . averred that, during 2012, BANA repeatedly stated that it no longer owned the 'loan' and mortgage, and refused to reveal the identity of the new owner. He further averred, in relevant part, that (1) HCSB failed to establish that notice of default was delivered to the defendants as a condition of the mortgage due to Rhodes averring that HCSB had sent notice by certified mail without proof of receipt and (2) he could no longer find any physical branches of HCSB in Connecticut which

'raise[d] questions as to [HCSB's] existence and status as a real party in interest in this matter.'[3]

"On October 30, 2017, the court, *Randolph, J.*, held a hearing on the motion for summary judgment and heard arguments from both parties. Three days later, the court granted HCSB's motion for summary judgment as to liability. In its order, the court found that no genuine issue of material fact existed as to the defendants' liability and that the defendants' special defenses and affidavit were insufficient to rebut HCSB's prima facie case.

"On November 28, 2017, HCSB filed a motion to substitute M&T as the plaintiff, pursuant to Practice Book §§ 9-16 and 9-23. In support of its motion, HCSB attached a copy of a certificate of effectiveness that evidenced that, as of November 1, 2015—approximately twenty-one months before HCSB filed its motion for summary judgment as to liability—HCSB had merged into M&T. Over the defendants' opposition, the court, *Lee, J.*, granted that motion on December 11, 2017. On February 26, 2018, the court, *Randolph, J.*, rendered judgment of foreclosure by sale in favor of M&T, ordering that a sale of the property be held on June 23, 2018. On March 6, 2018, notice of judgment of foreclosure by sale was sent to the defendants." (Footnote added; footnotes omitted.) *Hudson City Savings Bank* v. *Hellman*, supra, 196 Conn. App. 838–42.

In *Hellman*, this court held that HCSB, as the former plaintiff, had "failed to establish that no genuine issue of material fact existed regarding whether it satisfied a condition precedent to foreclosure." Id., 849. Important

_____

[3] The mortgage required that "[a]ll notices given by [b]orrower or [l]ender in connection with this [s]ecurity [i]nstrument must be in writing. Any notice to [b]orrower in connection with this [s]ecurity [i]nstrument shall be deemed to have been given to [b]orrower when mailed by first class mail or when actually delivered to [b]orrower's notice address if sent by other means."

to our decision on this issue was the contested nature of the notice to the defendants. The defendants averred that, because the Rhodes affidavit states that the notice was sent by certified mail, there was no evidence that HCSB had complied with the requirement of the mortgage that notice be sent by first class mail. HCSB then countered that the copy of the envelope shows it was sent by first class mail. As a result of these competing assertions, there was a genuine issue of material fact that precluded the granting of summary judgment.[4] Id., 858.

After our decision in *Hellman*, due to the onset of the COVID-19 pandemic in March, 2020, there was no activity on the docket until the plaintiff filed its second motion for summary judgment in December, 2021. In their objection to the plaintiff's motion for summary judgment, the defendants argued that a continuance pending compliance with the discovery request would be more appropriate, pointing out that they had requested that the plaintiff provide details about how and when the plaintiff came into possession of the note, the circumstances of the prior transfer of the note and mortgage by BANA to the plaintiff, and the consideration allegedly paid by the plaintiff for the note and mortgage. On July 19, 2022, the court, *Spader, J.*, issued an order in which it noted the outstanding discovery disputes and issued an order on the plaintiff's pending objection. In a separate order dated July 19, 2022 (July discovery order), the court further found that the defendants' discovery requests were "overly broad, in general, seeking, arguably, volumes of inadmissible and irrelevant documents. There is no specificity to the requests and

---

[4] In light of this conclusion, we declined to consider two claims by the defendants related to the granting of summary judgment, namely, that (1) there were genuine issues of material fact as to the validity of the assignment of the note by BANA to HCSB, and (2) more discovery was needed from HCSB as to how it came into possession of the note. *Hudson City Savings Bank* v. *Hellman*, supra, 196 Conn. App. 849 n.9.

they appear to just [be] an attempt to burden the target entities and delay the proceeding." The court ordered that "the plaintiff shall disclose documents relating to the purported demand notices/EMAP notices and any communications relating to the alleged default that have not already been included as attachments to pleadings herein. To the extent that the actual note and mortgage and assignments thereto were provided as attachments to previous motions if there are any other assignments or modifications that were not provided as exhibits, they should be sent to the defendants' counsel." The court also ordered the plaintiff to produce any documents reviewed and relied on to produce the affidavits, as well as any and all demand notices that may not have already been included in the pleadings. The defendants unsuccessfully sought reconsideration of the discovery order.

Attached to its second motion for summary judgment, the plaintiff submitted an affidavit from Juan Rubio, an agent of BANA (Rubio affidavit). The Rubio affidavit averred, inter alia, that notice of default had been mailed via first class mail on June 21, 2013, to the defendants. On November 16, 2022, the court, *Genuario, J.*, issued an order denying the second motion for summary judgment. The court concluded that there was a genuine issue of material fact because of the discrepancy between the Rubio affidavit and the Rhodes affidavit as to the method by which the notice of default and intent to accelerate was mailed—either certified mail, as averred in the Rhodes affidavit, or first class, as averred in the Rubio affidavit.

Trial was held on January 31 and February 14, 2023. The plaintiff called two witnesses, Zachary Chromiak, an employee of BANA, and Kristy Nanci, an employee of Covius, a subcontractor of BANA responsible for processing the mailing of the notice of default and acceleration to the defendants. Both defendants also testified for the defense. The parties submitted posttrial briefing.

On May 12, 2023, the defendants also filed a motion to open the evidence.

On May 17, 2023, the court, *Genuario, J.*, issued its memorandum of decision. In its memorandum of decision, the court summarized the testimony of Chromiak, noting that, as "part of his duties, [Chromiak] had examined the original note, and the records of [BANA], including correspondence, affidavits of debt, payoff figures, systems notes, and other records including records of payments and disbursements. His testimony was sufficient to establish that the plaintiff was the owner of the note and the defendants were in default of their obligations under the note. Additionally, both the defendants testified and stated in their testimony unequivocally, that they signed the note and that they had not kept up with their payments on the note."

As to the EMAP notice, the court found that both Chromiak and Nanci established that "a notice which included all the [required] criteria was sent." The testimony of Chromiak and Nanci further established that "a notice was prepared by importing the data in the [BANA] files to a template which allowed the letter to be printed by Covius and ultimately mailed. . . . The testimony of [Nanci] establishes . . . that the letter was printed by Covius [and] placed in an envelope with prepaid postage. The amount of the prepaid postage was consistent with what is required for first class mail and placed in a secure bin. Representatives of the United States Postal Services [USPS] arrive at the Covius premises and take the letters from the secure bin. In this way, the letters are printed and placed into an envelope by Covius using the business record information contained in the [BANA] files. The court finds, by a preponderance of the evidence, that, by placing the letters in a secure bin at the Covius place of business, which bin is accessed by [USPS] employees, Covius has delivered the letter to the post office to be sent by first class mail." Therefore, the court concluded, the plaintiff

had complied with the necessary conditions precedent in the mortgage deed. The court rendered a judgment of foreclosure by sale and entered an order setting a sale date of November 18, 2023. The plaintiff then filed an objection to the defendants' motion to open, and the court sustained the plaintiff's objection to the motion to open. The defendants then filed a motion to reargue, which was denied.

This appeal followed. Additional facts and procedural history will be set forth as necessary.

I

The defendants first claim that the court's discovery rulings deprived them of a defense such that they were denied a fair trial. The crux of the defendants' claim is that the court improperly sustained objections to certain discovery requests and denied their motion for a continuance, and that, had they been permitted to obtain the requested discovery, the defendants would have been able to prove that BANA was not operating with the authority or agreement of M&T when it issued the notice of acceleration and default and EMAP notice to them.[5] In response, the plaintiff notes that the defendants waited more than eight years to serve any admission requests and almost two years after this court

---

[5] In their reply brief to this court, the defendants further argue that *Hudson City Savings Bank* v. *Hellman*, supra, 196 Conn. App. 841 n.4, "clearly rendered various of [the defendants'] discovery requests per se relevant to this litigation." This is a misinterpretation of *Hellman*. In our prior decision, this court held that (1) the trial court did not abuse its discretion in allowing the substitution of M&T as the plaintiff, (2) the defendants were not prejudiced by that substitution, (3) the court's granting of summary judgment as to the issue of liability was improper because the plaintiff had, at that point, failed to establish that no genuine issue of material fact existed regarding whether it had satisfied all the conditions precedent to foreclosure, and (4) HCSB established that it possessed the note at the time that it commenced the foreclosure action against the defendants, thereby establishing that it had standing to so commence the action. *Hudson City Savings Bank* v. *Hellman*, supra, 838–42, 848–51. In addressing the defendants' challenge to HSBC's standing, we noted that the Hellman affidavit, which averred, inter alia, that BANA had made certain representations to the defendants that

remanded the case subsequent to the first appellate proceedings. The plaintiff further avers that the court properly determined that the defendants' requests were "exceedingly expansive" and overbroad in its July discovery order. Pointing to the court's reasoning when it considered the renewed motion for a continuance on the morning of trial, the plaintiff argues that the court correctly reasoned that the defendants had not followed the proper methods of resolving discovery disputes, as dictated by our rules of practice, and that the court properly sustained the plaintiff's objection to the motion for a continuance. We agree with the plaintiff.

The following additional facts and procedural history are relevant for our resolution of this claim. The defendants propounded seventy requests for production to the plaintiff in January, 2022.[6] The plaintiff objected to

allegedly "raised doubts" as to its ability to assign the note and mortgage to the plaintiff (allegations raised again here and discussed in more detail in part III A of this opinion), in no way undercut HCSB's showing that it had standing. Id., 855. We noted that, "whether BANA had the power to assign the note and mortgage—therefore implicating whether HCSB was the proper holder of the note—goes to the merits of the foreclosure action." Id. As we noted, HCSB was under no further obligation to prove that it had possessed the note at the time that the foreclosure action was commenced because, at the October 30, 2017 hearing on the motion for summary judgment, "(1) it had produced the note endorsed in blank and (2) the defendants failed to offer evidence to rebut the presumption that HCSB possessed the note at the time it commenced the foreclosure action." Id., 856. We further stated that a copy of the assignment of the note was affixed to the Rhodes affidavit, clearly establishing that HCSB came into possession of the note by way of an assignment from BANA on January 7, 2013—well prior to the commencement of the action against the defendants. Id., 857. Moreover, the trial court's ruling on the defendants' requests for production ordered the plaintiff to provide "any other assignments or modifications" that were in its possession and "that were not already provided." Notwithstanding the discovery they were entitled to receive, it remains the case today, as it was in 2020, that the defendants have offered no evidence to rebut the presumption—also supported by the evidence—that the plaintiff had standing to pursue the action.

[6] We note that these requests for production included, for example, "[a]ll communications between you and the defendants" and "[a]ll communications between you and any other person concerning the defendants."

the defendants' first set of requests for production in April, 2022, arguing that it was "clear, on its face, that this discovery was propounded only as an annoyance or undue burden on the plaintiff, or simply to frustrate justice."[7] Also in April, 2022, the court granted a motion for a continuance of oral argument on the motion for summary judgment, noting that the motion could be reclaimed "after the parties meet to address discovery objections."[8]

In its July order with respect to the plaintiff's objection to the defendants' first set of requests for production, the court agreed with the plaintiff that the defendants' document requests were "overly broad, in general, seeking, arguably, volumes of inadmissible and irrelevant documents." The court further noted that the lack of specificity in the requests seemed to be an attempt to burden the plaintiff and delay the proceedings. Nonetheless, the court ordered the plaintiff to disclose "documents relating to the purported demand notices/EMAP notices and any communications relating to the alleged default that have not already been included as attachments to pleadings herein" as well as "any other assignments or modifications" to the actual note and mortgage that were not already provided. The court also ordered the plaintiff to turn over any documents relied on by the affiants in the creation of the

---

[7] We note that BANA, acting in its capacity as a codefendant in the action, filed its own objection to the defendants' request for production, citing reasons similar to those of the plaintiff.

[8] Practice Book § 13-10 (i) provides: "No objection to any request for production shall be placed on the short calendar list until an affidavit by counsel or self-represented parties is filed certifying that they have made good faith attempts to resolve the objection and that counsel and/or self-represented parties have been unable to reach an agreement. The affidavit shall set forth: (1) the date of the objection; (2) the name of the party who filed the objection and to whom the objection was addressed; (3) the date, time and place of any conference held to resolve the differences; and (4) the names of all conference participants. If no conference has been held, the affidavit shall also set forth the reasons for the failure to hold such a conference."

submitted affidavits, if any, "beyond what has already been provided." Lastly, the court ordered the plaintiff to turn over "any and all demand notices that may not have already been included in the pleadings." It set a deadline of August 31, 2022, for compliance with its order.

The defendants filed a motion for reargument of the July discovery order. The plaintiff filed a notice of compliance with the court before the deadline, indicating that it had provided another forty-two pages of documents. On November 30, 2022, the defendants served interrogatories and requests for production to the plaintiff and BANA, largely centered on the question of who possessed and/or transferred the note and the mortgage at different points during the preceding litigation, as well as the plaintiff's relationship with BANA. On December 9 and 12, 2022, the defendants also served two separate sets of requests for admission each on the plaintiff and BANA, largely centered on the same issues as the November 30, 2022 interrogatories. On January 5, 2023, the plaintiff and BANA objected to both sets of requests for admission, asserting, inter alia, that the requests were beyond the scope of this court's remand in *Hellman*.

On January 20, 2023, the defendants filed a motion for a continuance of the trial—which was scheduled to commence on January 31, 2023—asserting that they needed time to "review in advance of trial . . . the plaintiff and [BANA's] recent [objections to the requests for admission]," that "[r]esponses from [the plaintiff and BANA] to [the interrogatories and requests for production] are also due prior to the current trial date," and that "[i]t is clear that these [interrogatories and requests for production] will also be entirely objected to, and [the defendants] will be required to seek review of same as well in order to be prepared for trial." On January 24, 2023, the court denied that motion without

prejudice but ordered that "[t]he defendants may renew the motion on January 31, 2023, prior to the commencement of trial. In the event that it is denied, all parties should be prepared to proceed on January 31, 2023."

On January 23, 2023, the defendants also filed a motion, supported by an affidavit averred by Charles, to "determine the sufficiency of objections by the plaintiff and [BANA] to requests for admission." The court denied that motion, "to the extent that the request is one for adjudication of the request prior to the commencement of trial." On January 30, 2023, the plaintiff and BANA objected to the interrogatories and requests for production on the basis that the requests had been served "on the eve of trial" and were "being used merely for delay purposes rather than for a legitimate need for any information to assist in the prosecution or defense of this action."

On January 31, 2023, the trial commenced as scheduled. At the outset of the trial, the defendants renewed their motion for a continuance and motion to determine the sufficiency of the plaintiff's objections to their requests for admission. The defendants argued that there had been no "substantive response" to their interrogatories. The plaintiff responded that the defendants were "consistently" filing "discovery as a tactic to delay things." In ruling on this renewed motion, the court noted that the defendants had more than two years after this court's decision in April, 2020, in which to conduct discovery, in accordance with the rules of practice. The court noted that the defendants "have not taken advantage of these processes [as set forth in the rules of practice] or to the extent you have there have been no court orders sanctioning the plaintiffs. So, I think the time for trying this case is here and I'm going to deny your motion for continuance, and I am going to

deny your request for adjudication of the discovery issues as untimely at this point."[9]

In their principal brief to this court, the defendants now argue that—due to procedural "maneuvers" on the part of the plaintiff—they were "required to address the patent deficiencies" in the plaintiff's objection to their discovery request within the ambit of the plaintiff's second motion for summary judgment, rather than through the "normal discovery practice."[10] The plaintiff

---

[9] We note that Charles averred, in an affidavit submitted to the court on July 2, 2022, that, "due to the plaintiff's own conduct," no meeting between the defendants and the plaintiff had occurred for the purpose of discussing the discovery objections. The defendants argued that the plaintiff's failure to meet and discuss the discovery objections was a "brazen violation" of the court's order marking off the second motion for summary judgment. After the court's July discovery order, the defendants submitted a motion for reargument, repeating the claim that the failure of the parties to meet pursuant to Practice Book § 13-10 was due to the plaintiff's conduct. The court denied that motion. Our review of the record confirms that the defendants never filed a motion to compel, nor moved for sanctions related to discovery issues.

[10] The defendants also aver that Charles' health impacted his ability to function at full capacity as the defendants' counsel, due to an alleged COVID-19 infection. More specifically, the defendants argue that, after the July discovery order, they intended to "promptly propound additional, more focused discovery requests" and would have done so, but for the "greatly reduced capacity" of Charles, caused by the COVID-19 infection. In his trial testimony, Charles testified that he was "ill" with COVID-19, and "at best, was able to work only at a greatly reduced capacity" throughout the remainder of 2022. According to the defendants, "[b]ut for his condition, the defendants' additional discovery requests could readily have been propounded, and objections to them resolved, well in advance of trial. . . . [but] the defendants were not able to propound their two sets of [requests for admissions and interrogatories] to [BANA] and [the plaintiff] until December of 2022." Given that these factual assertions were before the trial court, as a component of the defendants' motion for a continuance, we consider them as part and parcel of the defendants' claim that the court improperly denied their motion for a continuance.

In addition, the defendants argue in passing that, at the time of trial, the court failed to rule on their motion to determine the sufficiency of the plaintiff's objections to the requests for admission. As the defendants acknowledge elsewhere in their principal brief, however, the court in fact denied that motion on the record on January 31, 2023. To the extent that

counters that the trial court properly adjudicated the "wildly excessive" discovery requests and that the defendants have not demonstrated any impropriety in the court's ruling sustaining the plaintiff's objections to those discovery requests.

We next set forth our standard of review. "[W]e review a denial of a motion for a continuance to obtain discovery under an abuse of discretion standard. . . . The ultimate issue in our review, therefore, is whether the court reasonably could have ruled on the . . . motion for a continuance as it did." (Citations omitted.) *West Hartford* v. *Murtha Cullina, LLP*, 85 Conn. App. 15, 26, 857 A.2d 354, cert. denied, 272 Conn. 907, 863 A.2d 700 (2004). Upon our review of the record, we cannot conclude that the court abused its discretion.

The present action began in December, 2013. This court released its decision in *Hellman* on April 14, 2020. It was not until January, 2022, that the defendants propounded their requests for production. The plaintiff moved to extend the deadline for compliance to mid-April, 2022, which was granted by the court.[11] The plaintiff filed its responses and objections to the defendants' requests for production on April 12, 2022. The court issued its order regarding the plaintiff's objections on July 19, 2022. The plaintiff gave notice of compliance with that order on August 29, 2022. The defendants waited until November 30, 2022, to begin propounding additional discovery requests. The defendants then moved for a continuance on the grounds of incomplete discovery on January 20, 2023—just eleven days before the scheduled start of trial. Three days later, the defendants filed a motion to determine the sufficiency of the

the defendants claim that the court erred in failing to rule on that motion, we reject that claim.

[11] We note that the court also then twice granted the defendants' request for a continuance of the oral argument on the reclaimed second motion for summary judgment.

objections to the discovery requests. In the interim, the defendants never alerted the court to the purported deficiencies in the plaintiff's production. Nor did the defendants ever request additional time to propound discovery requests on the basis of Charles' illness. See footnote 10 of this opinion. We further note that the defendants did not move for the court to intervene on their discovery requests nor did they seek sanctions against the plaintiff. Given the history of the litigation, the failure of the defendants to seek timely remedies available under our rules of practice and the untimely request for relief on the eve of trial, we cannot conclude that the court abused its discretion in its discovery rulings or in denying the defendants' motion for continuance. See *State* v. *Bradley*, 39 Conn. App. 82, 88, 663 A.2d 1100 (1995) ("[m]otions for continuance on the eve of trial are disfavored"), cert. denied, 236 Conn. 901, 670 A.2d 322 (1996). The defendants' claim therefore fails.

## II

The defendants next claim that the court incorrectly determined that the plaintiff had sustained its burden of proof because the evidence was insufficient to establish both that the plaintiff (1) authorized BANA to act on its behalf, and (2) complied with the requisite conditions precedent to foreclosure. We consider each of these claims in turn.

## A

The defendants argue that the plaintiff failed to adequately demonstrate that BANA had acted with the requisite authority in issuing notice of acceleration and default to them. The defendants further contend that Chromiak's testimony as to the existence of a servicing agreement between BANA and M&T is insufficient to establish the existence of such a relationship. According to the defendants, this court's ruling in *Aurora Loan*

*Services, LLC* v. *Condron*, 181 Conn. App. 248, 186 A.3d 708 (2018) (*Aurora*), set forth a "stringent standard" for demonstrating authorization to act on behalf of a lender," one that the plaintiff "utterly failed" to satisfy in the present case. The plaintiff counters that the defendants misread *Aurora*, a case in which a loan servicer was the foreclosing plaintiff, rather than the owner of the note, and a power of attorney and servicing agreement were necessary to establish authority to foreclose. Here, because it was foreclosing "in its own name," the plaintiff contends that it had standing to do so and was under no obligation to produce documentation of a servicing agreement authorizing BANA to issue the notice of acceleration.[12]

We first set forth the following relevant legal principles and standard of review. "Historical facts constitute a recital of external events and the credibility of their narrators. So-called mixed questions of fact and law, which require the application of a legal standard to the historical-fact determinations, are not facts in this sense. . . . [Such questions require] plenary review by this court unfettered by the clearly erroneous standard. . . . When legal conclusions of the trial court are challenged on appeal, we must decide whether [those] . . . conclusions are legally and logically correct and find support in the facts that appear in the record." (Internal quotation marks omitted.) *Lindholm* v. *Brant*, 283 Conn. 65, 76–77, 925 A.2d 1048 (2007). In order to establish a

---

[12] The defendants also argue in their principal brief that Chromiak's testimony was insufficient to establish the existence of any servicing agreement or power of attorney under the best evidence rule. See Conn. Code Evid. § 10-1. The plaintiff counters that, under this court's decision in *Citibank, N.A.* v. *Stein*, 186 Conn. App. 224, 199 A.3d 57 (2018), cert. denied, 331 Conn. 903, 202 A.3d 373 (2019), Chromiak's testimony was sufficient to establish that BANA was operating with authority when it issued the notice of acceleration. Because we agree with the plaintiff that it was not required to produce evidence of the servicing agreement or power of attorney to prevail on the merits of this claim, we do not reach this issue.

prima facie case in a mortgage foreclosure action, a plaintiff must establish, inter alia, that it is the owner of the note and mortgage, and that it has complied with any conditions precedent to the foreclosure. See *Hudson City Savings Bank* v. *Hellman*, supra, 196 Conn. App. 850. Here, we must determine whether the court properly concluded that the plaintiff was not required to produce evidence of the servicing agreement between itself and BANA, as a matter of law.

A brief recitation of the relevant portion of this court's opinion in *Aurora* is necessary in order to evaluate the defendants' claim. In *Aurora*, after the trial court rendered a judgment of strict foreclosure, the mortgagors appealed, claiming, inter alia, that the foreclosing party—a loan servicer—lacked the authority to foreclose on the mortgage. *Aurora Loan Services, LLC* v. *Condron*, supra, 181 Conn. App. 251. In sum, the mortgagors claimed that the loan servicer had failed to demonstrate that it was acting with the note holder's authority to foreclose on the property. Id., 254. The loan servicer maintained that it previously had been the holder of the note and that it had provided sufficient evidence of its authority to foreclose. Id. As this court explained: "The rules for standing in foreclosure actions when the issue of standing is raised may be succinctly summarized as follows. When a holder seeks to enforce a note through foreclosure, the holder must produce the note. The note must be sufficiently endorsed so as to demonstrate that the foreclosing party is a holder, either by a specific endorsement to that party or by means of a blank endorsement to bearer. If the foreclosing party shows that it is a valid holder of the note and can produce the note, it is presumed that the foreclosing party is the rightful owner of the debt. That presumption may be rebutted by the defending party, but the burden is on the defending party to provide sufficient proof that the holder of the note is not the owner of the debt,

for example, by showing that ownership of the debt had passed to another party. It is not sufficient to provide that proof, however, merely by pointing to some documentary lacuna in the chain of title that *might* give rise to the possibility that some other party owns the debt. In order to rebut the presumption, the defendant must *prove* that someone else is the owner of the note and debt. Absent that proof, the plaintiff may rest its standing to foreclose on its status as the holder of the note." (Emphasis in original; internal quotation marks omitted.) Id., 254–55. The issue in *Aurora* was that the loan servicer contended that it had entered into a trust agreement by which a third party owned the debt and the loan servicer was authorized to service the mortgage and initiate foreclosure proceedings. Id., 252–56. This court reviewed the evidence and concluded that there had been sufficient demonstration that the loan servicer had acted under an existing trust agreement as well as a limited power of attorney, which made clear that the note holder had "unequivocally manifested its intention to authorize the [loan servicer] to exercise its rights to enforce the debt." Id., 258.

Here, however, the plaintiff is correct that, as the holder of the note, it was under no obligation to produce evidence of the servicing agreement or power of attorney that authorized BANA to issue the requisite notices to the defendants. Put differently, because the plaintiff in the present case possessed the note, which was endorsed in blank, there was a rebuttable presumption that it was the owner of the debt—and the defendants produced no evidence that the plaintiff was not the owner of the debt. Chromiak testified that he had reviewed BANA's business records associated with the servicing of the mortgage, that BANA had originated the loan, that M&T owns the debt, and that there had been no other loan servicers. The note, endorsed in blank, was

provided to the court by M&T. The defendants did not object to this testimony or the relevant exhibits.

As the court noted in its memorandum of decision, "[t]he plaintiff did not have to establish the authorization of the loan servicer to bring the action because the loan servicer did not bring the action, the plaintiff initiated this lawsuit. [BANA's] employee testified and through him the plaintiff introduced business records of [BANA] which established the plaintiff's right to foreclose the mortgage. . . . Nothing in the business record rule requires that the person testifying, to establish the admissibility of its own business records, be an agent of a party. The employee of [BANA] testified based on his own knowledge that certain records were kept in the regular course of business of [BANA] and that it was the regular course of business of [BANA] to keep such records." To be clear, Charles admitted during his testimony that he had no documents or affidavits to suggest that anyone else was the proper party to bring this action. In conclusion, the plaintiff is correct that, given the facts that were established in this case, there was no need to confirm in any further detail the existence of a servicing agreement between BANA and M&T. The defendants' claim, therefore, fails.

B

The defendants also argue that the court's "conclusion that the plaintiff established [that] a notice of default had been sent to defendants by first class mail was erroneous." The defendants contend that the court's conclusion that the notice of default was mailed via first class mail was erroneous because it "relied heavily" on the testimony of Nanci, who was "not yet employed at Covius in 2013" when the notices were mailed. The defendants contend that, if we determine that Nanci's testimony was properly admitted; see part III B of this opinion; we must nonetheless conclude

that the records and testimony put forth by Nanci "in no way establish the plaintiff's case." In support of this argument, the defendants point to alleged discrepancies with the markings on the envelopes of the exhibits offered at trial, as well as the alleged lack of personal knowledge on the part of Nanci as to the business practices at Covius at the time of the mailing. Although the defendants acknowledge that the task of weighing properly admitted evidence is "within the province of the trier of fact" they nonetheless maintain that the evidence was insufficient to support the conclusion that proper notice was provided by the plaintiff, as a condition precedent to foreclosure.

The plaintiff concedes that the notice of acceleration contains a "scrivener's error" with respect to the date of the note. The plaintiff argues that the notice nonetheless correctly identifies the borrowers, the residential property address, the original amount of the note, and the relevant missing principal and interest payment information. Accordingly, the plaintiff contends that the court had ample evidentiary support for the conclusion that the requisite notices were issued via first class mail.

We next set forth the relevant legal principles necessary to resolve the defendants' claim. "To the extent that the trial court has made findings of fact, our review is limited to deciding whether such findings were clearly erroneous. . . . As the finder of fact, the court is responsible for weighing the evidence. It is the [fact finder's] right to accept some, none or all of the evidence presented. . . . Moreover, [e]vidence is not insufficient . . . because it is conflicting or inconsistent. [The court] is free to juxtapose conflicting versions of events and determine which is more credible. . . . It is the [finder of fact's] exclusive province to weigh the conflicting evidence and to determine the credibility of witnesses." (Internal quotation marks omitted.) *Caliber Home Loans, Inc.* v. *Zeller*, 205 Conn. App. 642, 654–55,

259 A.3d 1, cert. denied, 338 Conn. 914, 259 A.3d 1179 (2021). "Because it is the sole province of the trier of fact to assess the credibility of the witnesses, it is not our role to second-guess such credibility determinations." *State* v. *Franklin*, 115 Conn. App. 290, 292, 972 A.2d 741, cert. denied, 293 Conn. 929, 980 A.2d 915 (2009).

The court found that "[t]he defendants also argue that the plaintiff did not comply with the condition precedent required in the mortgage, and that [it] failed to establish that the plaintiff had . . . complied with the condition precedent in its mortgage that it notify the defendants that they were in default, a date not less than thirty days from the date that the notice is given by which the default must be cured, the action required to cure the default and the fact that the failure to cure the default would result in acceleration of the sum secured and foreclosure or sale of the property. Both [Chromiak] and another witness [Nanci], who was an employee of an entity named Covius, testified. Both established that a notice which included all the above criteria was sent."

At trial, the plaintiff admitted into evidence copies of the notice of acceleration and default, dated June 21, 2013, as well as the EMAP notice, dated June 2, 2013. Nanci testified that the required notice was mailed first class through Covius, picked up from a Covius facility by USPS, and not returned to Covius. Both Chromiak and Nanci testified as to the relevant business records that also support the court's conclusion that the notice was issued via first class mail to the defendants—as did the Rubio affidavit. In light of the ample evidence before it, the court's finding that such a mailing was in fact issued is not clearly erroneous.

### III

The defendants next claim that the court made improper evidentiary rulings. More specifically, the

defendants argue that the court (1) improperly excluded portions of Charles' testimony as to phone conversations he purportedly had with BANA representatives and (2) improperly admitted Nanci's testimony with respect to certain business records. We consider each of these arguments in turn.

A

The defendants argue that, during alleged conversations between Charles and BANA representatives, the BANA representatives made certain representations to the defendants regarding the lack of opportunity to modify the mortgage and that the debt could not be satisfied for "anything less than full price." According to the defendants, the excluded testimony should have been admitted because it falls within an exception to the prohibition against hearsay as statements of a party opponent.[13]

The plaintiff counters that the statements Charles offered were lacking the proper foundation and were also inadmissible hearsay, and, therefore, they were properly excluded. The plaintiff argues in the alternative that, even if the testimony was erroneously excluded, such error was harmless. We conclude that the court did not abuse its discretion in excluding the testimony.

The following additional facts and procedural history are relevant to the defendants' claim. On February 14, 2023, Charles took the stand. Almost immediately, he began to testify as to being "contacted repeatedly" by

---

[13] We note that the defendants also brief the argument that the court erroneously precluded the testimony because it was not being offered as hearsay. In essence, the defendants argue that the testimony was being offered, instead, to demonstrate inequitable conduct on the part of the mortgage servicer, BANA, because the statements were fraudulent misrepresentations. We decline to review this claim, for the reasons set forth in footnote 16 of this opinion.

BANA "representatives." The plaintiff objected to Charles' testimony regarding the content of these conversations on the basis of hearsay and as "calling in settlement negotiations." The defendants responded that the testimony was admissible because BANA is a party to the action and an agent to the plaintiff. The court reasoned that, "I can't let you testify in general about what generally people from [BANA] have said. You would have to start out by identifying the person." The court further noted that a more complete foundation would be necessary to determine what authority these representatives had at the time of these alleged conversations, adding that, "if you can lay better groundwork, I will hear what you and counsel have to say at any given point in time about particular testimony." The defendants then argued that BANA is "clearly the agent" of the plaintiff and it "functioned at all times as the agent of the plaintiff in this action." The court acknowledged this point, stating that "what I can't let you do is say I was on the phone with somebody who I thought was from [BANA] and they said X. If you want to provide me with a little more detail about how the conversation came about, who you spoke to, then maybe you can get over the hearsay objection. But if it's as general as what it appears to be, I don't think you can get over the hearsay objections at this point. You haven't told me who said what." The defendants replied, "People who contacted [Charles] with knowledge of the loan, with knowledge of the situation regarding the loan, in an effort to secure payment of the loan, who represented themselves to be authorized to speak on behalf of [BANA] and given the intimate knowledge they had of the situation of the loan, of the status of the loan right down to how many payments had been— were in arrears at that time, the amount of the loan, the monthly payments, they had all the information . . . . No one else would have contacted me attempting to get me to make payments to [BANA]."

Charles then testified that he had requested a modification of the loan terms. When he attempted to describe the response from the purported BANA representatives, the plaintiff's counsel again objected on hearsay grounds and the court sustained the objection, noting that, "[i]n order for a statement from a third party to be admitted, you have not only to prove the third party was an agent of the defendant but you have to prove the scope of the agency. You can't prove that from the mouth of the agent. By your own words, these are people who were trying to collect the loan. They may or may not have had authority to negotiate the loan. So, I don't see why on the record before me how I can allow their statements . . . to be admitted . . . ." The defendants could not provide any further foundation in support of admitting these statements by the alleged representatives of BANA.

At the conclusion of trial, the defendants noted that they did not have any additional evidence to put forward, "subject to any disposition of any of the open issues like the hearsay objection." The court set a posttrial briefing schedule, and the defendants then inquired as to "any special handling with respect to the hearsay issue regarding the [BANA] representatives." The court replied, "If you want to file a motion to open evidence for the purpose of putting somebody on, you can file that. If you want to argue that certain evidence the court has admitted it shouldn't consider because it's in violation of the hearsay rule, you can . . . argue that in your brief."[14] On May 12, 2023, the defendants filed a motion to open the evidence.

---

[14] The defendants did not address the court's hearsay ruling as to the purported conversations between Charles and representatives of BANA in their posttrial briefing. In the motion to open the evidence, however, the defendants, for the first time, argued that the purported statements of BANA representatives were not being offered as exceptions to the prohibition against hearsay but, instead, that the court should have admitted them as fraudulent misrepresentations. According to the defendants, the court should have admitted the excluded testimony because, as nonhearsay, the

On June 13, 2023, the court held a hearing on the motion to open. At this hearing, the defendants argued *both* that the excluded testimony was admissible as an exception to the prohibition against hearsay and *also* that it was being offered to demonstrate that BANA had engaged in fraudulent misrepresentations—not for the truth of the matter asserted in the statements. In support of their contention that the excluded testimony should have been admitted, the defendants argued that § 8-3 (1) of the Connecticut Code of Evidence should apply, rendering the excluded testimony admissible.[15] The court reiterated that it had sustained the objection to the purported statements by BANA representatives because the defendants could not identify the declarant, the declarant's position at BANA, or the scope of the declarant's authority. The court also noted that, if the statements were being offered as fraudulent misrepresentations rather than for the truth of the matter asserted therein, then the defendants would still need to demonstrate them as such by providing evidence of their falsity. Upon the conclusion of arguments, the court denied the motion.[16]

statements were not being offered for their truth but because the statements were "*untrue,* and thus gives rise to [the defendants'] assertions of estoppel, unclean hands, violation of the implied covenant of good faith and fair dealing . . . and inequitable conduct." (Emphasis in original.) We discuss the claim that the court improperly granted the plaintiff equitable relief in part V of this opinion.

[15] More specifically, the defendants argued that § 8-3 (1) (G) of the Connecticut Code of Evidence applies to the excluded testimony. Section 8-3 (1) (G) renders admissible "a statement made by a predecessor in title of the party, provided the declarant and the party are sufficiently in privity that the statement of the declarant would affect the party's interest in the property in question." Nothing in this rule obviates the propriety of the court's determination that the defendants did not lay a proper foundation for the statements when they failed to identify the declarant and whether the individual had the authority to make the alleged statement.

[16] We further note that the defendants, in the statement of issues in their principal brief before this court, identify, as their seventh issue, "[w]hether [the defendants'] motion to reopen evidence to permit certain testimony of [Charles] that had been excluded at trial was properly denied." Our review of the record reveals that the defendants' motion to open the evidence, filed

We next set forth our standard of review. "It is well settled that [w]e review the trial court's decision to admit [or exclude] evidence, if premised on a correct view of the law . . . for an abuse of discretion. . . . Under the abuse of discretion standard, [w]e [must] make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion." (Internal quotation marks omitted.) *Corbo* v. *Savluk*, 209 Conn. App. 351, 361, 267 A.3d 919 (2021). "On appeal, a court's evidentiary rulings will be overturned only where there was an abuse of discretion and a showing by the defendant of substantial prejudice or injustice. . . . In reviewing claims that the court abused its discretion, every reasonable presumption should be made in favor of upholding the court's ruling." (Internal quotation marks omitted.) *Parker* v. *Slosberg*, 73 Conn. App. 254, 258–59, 808 A.2d 351 (2002).

An out-of-court statement used to prove the truth of the matter asserted is hearsay and is generally inadmissible unless an exception applies. See *State* v. *Stepney*, 191 Conn. 233, 249–50, 464 A.2d 758 (1983), cert. denied, 465 U.S. 1084, 104 S. Ct. 1455, 79 L. Ed. 2d 772 (1984).

subsequent to the trial and posttrial briefing, put forward—for the first time—the argument that the purported statements by alleged BANA representatives were being offered not for the truth of their assertions, but instead as fraudulent misrepresentations. Beyond the statement of issues, the defendants do not advance an argument that the court improperly denied their motion to open in their briefing to this court. Rather, the defendants argue only that the court erred in precluding Charles' testimony during the evidentiary portion of trial, even though they did not argue at the time they proffered that testimony that it was admissible as nonhearsay because it was not being offered for the truth. Because the defendants do not brief the issue of whether the motion to open was properly denied, we deem that claim to be inadequately briefed. See *Burton* v. *Dept. of Environmental Protection*, 337 Conn. 781, 803, 256 A.3d 655 (2021) ("Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . [When] a claim is asserted in the statement of issues but thereafter receives only cursory attention in the brief without substantive discussion or citation of authorities, it is deemed to be abandoned." (Internal quotation marks omitted.))

One such exception is for admissions made by a party opponent, which are generally admissible against that party. See *State* v. *Markeveys*, 56 Conn. App. 716, 719, 745 A.2d 212, cert. denied, 252 Conn. 952, 749 A.2d 1203 (2000). See also Conn. Code Evid. § 8-3 (1).

In order to survive any hearsay objection, a party offering testimony as to the substance of a statement by a party's agent or employee must satisfy another test: "A broad statement of that rule is that the statement of an agent is admissible as an admission against his [or her] principal if the statement concerned a matter within the scope of the declarant's employment and was made before that relationship was terminated." (Internal quotation marks omitted.) *Hartford National Bank & Trust Co.* v. *DiFazio*, 6 Conn. App. 576, 585, 506 A.2d 1069, cert. denied, 200 Conn. 805, 510 A.2d 192 (1986); see also Conn. Code Evid. § 8-3 (1) (D) (rendering admissible "a statement by the party's agent, servant or employee, concerning a matter within the scope of the agency or employment, and made during the existence of the relationship").

Party opponent admissions, however, do not fall within this exception to the prohibition against hearsay statements when the declarant is unidentifiable. "To fall within that exception, one must be able to identify the declarant clearly as a party to the litigation." *DeMarkey* v. *Fratturo*, 80 Conn. App. 650, 655, 836 A.2d 1257 (2003). Moreover, "[b]efore evidence can be admitted to show what an agent said, it must be established that the agent was authorized by the principal to make an admission. . . . The agency relationship must be proved by a fair preponderance of the evidence." (Internal quotation marks omitted.) *Burns* v. *RBS Securities, Inc.*, 151 Conn. App. 451, 462, 96 A.3d 566, cert. denied, 314 Conn. 920, 100 A.3d 851 (2014); see also *Robles* v. *Lavin*, 176 Conn. 281, 284, 407 A.2d 959 (1978) ("[b]efore evidence can be admitted to show what an

agent said, it must be established that the agent was authorized by the principal to make an admission").

Here, the defendants failed to establish the scope of the authority or the identity of the purported agents of BANA, sufficient to justify admitting Charles' proffered hearsay testimony. Given that Charles could not identify who these "representatives" were, or the scope of their authority, the court was well within its discretion in determining that the statements offered by Charles were inadmissible hearsay.[17] The defendants' claim therefore fails.

Assuming, without deciding, that the agency relationship between these unidentified individuals and the plaintiff was established, we nonetheless conclude that the defendants still cannot demonstrate that the court abused its discretion in excluding the proffered testimony because the defendants have not demonstrated that the testimony was material or relevant. As the court noted, when considering the defendants' motion to open evidence to permit this same previously excluded testimony, the alleged statements made to Charles were irrelevant and immaterial to the present case because the holder of the note is "entitled to collect the note according to its terms regardless of the business terms

---

[17] We note that, as discussed in part II A of this opinion, the defendants dispute that BANA was operating as an agent of HCSB when it issued the notice of acceleration and EMAP notice. It is difficult to reconcile that argument with the contention that the purported statements made to Charles, allegedly occurring around the same time, by employees of BANA, were admissible as statements of an agent of a party opponent. The plaintiff has contended that BANA was its servicing agent, consistently, throughout the proceedings before the trial court. See *Hudson City Savings Bank* v. *Hellman*, supra, 196 Conn. App. 854 (HCSB submitted affidavit in connection with first summary judgment motion averring that BANA is its servicing agent). Even if we look past this, and surmise that the defendants had conceded that BANA was operating as an agent of HCSB when the purported statements were made to Charles, the court acted within its discretion in excluding the testimony for lack of a proper foundation, for the reasons set forth in this section of our opinion.

pursuant to which it acquired the note." Put simply, the court found that the proffered evidence was not relevant or material because the holder of the note is entitled to collect the note according to its terms regardless of how it came into possession of the note.

In order for statements of a party opponent to be admissible, there is a "threshold requirement that such statements must be relevant and material to issues in the case." (Internal quotation marks omitted.) *State* v. *Reese*, 77 Conn. App. 152, 162, 822 A.2d 348, cert. denied, 265 Conn. 910, 831 A.2d 252 (2003). In the present case, the court determined that the alleged statements of the unidentified declarant were not relevant or material to the issues presented in the case. The court therefore did not abuse its discretion in excluding the testimony.[18]

B

The defendants next argue that the court improperly overruled their objection to that portion of Nanci's testimony that addressed certain business practices at Covius in 2013. More specifically, the defendants objected at trial to portions of Nanci's testimony, arguing that Nanci should not have been allowed to testify as to business records created in 2013 because she was not employed by Covius until 2015. When Nanci was asked how she could be certain that the practices in 2013 were the same as those she was familiar with through her own experience, she testified, "I can say that because my manager was here at that time . . . he has trained me on these processes and has confirmed that information." The defendants objected to this testimony

---

[18] Similarly, even if we were to review the defendants' argument that Charles' testimony was improperly excluded because it was not being offered for the truth of the matter asserted, we would conclude that the court properly precluded that testimony because it was not relevant or material to the issues presented in this case.

on hearsay grounds and the court overruled the objection. In their principal brief, the defendants now contend that this ruling was erroneous, but they fail to cite to any legal authority that would support this conclusion. More specifically, although the defendants acknowledge that personal knowledge is not a foundational requirement for the introduction of a business record, they nonetheless argue—again, without citation to any legal authority—that the court's ruling was erroneous because, in order to admit the testimony, Nanci "must be equipped to state the entity's procedures giving rise to the records accord with the procedures with which she is familiar." Because this issue is inadequately briefed, we decline to address it. See *Braham* v. *Newbould*, 160 Conn. App. 294, 312 n.15, 124 A.3d 977 (2015) (it is not our court's role to "undertake the legal research and analyze the facts in support of a claim or argument when it has not been briefed adequately" (internal quotation marks omitted)).

IV

The defendants next claim that Nanci's testimony was improperly admitted due to judicial bias. Specifically, the defendants claim that the court "suggested" to the plaintiff that it had "potential weaknesses or gaps in its case" and issued a "sua sponte invitation and grant of leave" to the plaintiff to "identify and put on an additional, theretofore unidentified witness to remedy any such gaps or weaknesses." The plaintiff counters that the court's comments were given in the context of "housekeeping matters" and these comments did not demonstrate a lack of impartiality. The plaintiff further argues that the defendants did not raise any objection to the court's comments, did not bring to the court's attention any concerns about impartiality, and did not seek the recusal of the judge. We conclude that the court's comments do not rise to the level of plain error warranting reversal.

The following additional facts and procedural history are relevant to our resolution of this claim. Prior to the start of trial, on January 27, 2023, the parties filed a joint trial management report.[19] That report contained the names of four witnesses—Chromiak, Susan Vincent (an appraiser), Charles and Holly. The only other witness identified was a defense expert witness described as "[a] real property appraiser."[20]

At the close of the first day of trial, but before the plaintiff rested its case-in-chief, the court engaged in a scheduling conference with both parties. In so doing, the court stated:

"I do have the foreclosure calendar at 2 p.m., so I don't think we should do it tomorrow. I could make myself available Thursday or I could make myself available Friday. I prefer to do it Thursday.

"Think about that for a moment while I raise another issue. . . . I have not come to a conclusion on this issue; I want to emphasize that. It would appear to me that one of the issues in this case, and has been in this case all along including in the Appellate Court, is whether or not the plaintiff has sustained its burden of proof that it has complied with all conditions precedent, including the issuance of the demand letters and [EMAP] letter. I anticipate that there's going to be some briefing as to whether or not the records introduced by the witness who was employed by [BANA] are business records of [BANA] or not, or are they business records . . . of Covius, and it may not be that—it may well be that the evidence that is introduced already is sufficient to establish them as business records, or it may well

---

[19] The plaintiff previously had filed its own trial management report, which contained the same witness list as the joint report subsequently submitted to the court.

[20] On January 31, 2023, the parties filed a stipulation with the court as to the fair market value of the property. As a result of this stipulation, an appraiser did not testify at trial—for either of the parties.

be that the evidence that's introduced already is not sufficient to establish them as business records of [BANA] because some of them were compiled by Covius.

"The plaintiff may want to consider whether or not it wants to bring in a witness from Covius. If the plaintiff wants to do that, I'll give the plaintiff until next week to do that."

The defendants did not object to these comments by the court. After the first day of trial, the defendants filed a motion for a continuance, citing a viral infection and the recommendation of their doctor. The court, granting this request, continued the trial until February 14, 2023. On February 6, 2023, between the first and second day of trial, the plaintiff also filed a caseflow request, asking the court for permission for "its witness" to appear virtually, which the court granted. On February 10, 2023, the defendants filed their own caseflow request asking the court for permission to recall, if necessary, the plaintiff's witness, Chromiak. In support of this request, the defendants stated that they "may need to call [Chromiak] for brief testimony" and had so notified opposing counsel, so as to have him be available "virtually as required" subject to the court's ruling. This request remained outstanding when the trial recommenced.

At the start of the second day of trial, Charles, on the defendants' behalf, objected to Nanci's testimony, arguing that, "recognizing what went on at the last hearing . . . I do need to make an objection for the record that this witness . . . was not even identified by name until just now, or her affiliation was not listed among the witnesses for plaintiff in the joint pretrial memo and I have no notice whatsoever as to what this witness will testify as to. For these reasons, Your Honor, I must

object to plaintiffs putting this witness on as part of its case."[21]

In responding to this objection, the court noted that, at the close of evidence on the prior day of trial, it had "inquired" as to whether it may be necessary for the plaintiff to have a representative of Covius testify "to establish the business records" but that this was not a requirement—the court had merely "opined out loud or speculated out loud as to whether that was necessary. [The plaintiff's counsel] apparently responded by calling this witness. I don't think given the court's comments it should be a surprise to the defendants but [the court] will give the defendants ample opportunity to cross-examine and will give the defendant[s] a lot of latitude in that cross-examination, to the extent reasonable." The court then overruled the defendants' objection and allowed Nanci to testify.[22]

We next set forth our standard of review. Here, the defendants concede that they did not object to Nanci's testimony on the ground of judicial bias. Because that specific claim was not preserved, the defendants seek plain error review. "[The plain error] doctrine, codified at Practice Book § 60-5, is an extraordinary remedy used by appellate courts to rectify errors committed at trial that, although unpreserved, are of such monumental proportion that they threaten to erode our system

[21] Notably, the defendants did not request a continuance of the proceedings for additional time to prepare for the testimony of the witness in order to cure any prejudice arising from the lack of notice. See *Yeske* v. *Avon Old Farms School, Inc.*, 1 Conn. App. 195, 205–206, 470 A.2d 705 (1984) (court may entertain motion for continuance for late disclosure of witness).

[22] On appeal, the defendants also claim that the court's overruling of their objection to Nanci's testimony "independently renders her appearance an error warranting reversal" but without any further explanation or analysis. We deem any claim that the court improperly allowed Nanci to testify because she was not a disclosed witness to be abandoned. See *Deutsche Bank National Trust Co.* v. *Shivers*, 136 Conn. App. 291, 292 n.2, 44 A.3d 879 (claim not briefed on appeal was deemed abandoned, and court may decline to review it), cert. denied, 307 Conn. 938, 56 A.3d 950 (2012).

of justice and work a serious and manifest injustice on the aggrieved party. [T]he plain error doctrine. . . is not . . . a rule of reviewability. It is a rule of reversibility. That is, it is a doctrine that this court invokes in order to rectify a trial court ruling that, although either not properly preserved or never raised at all in the trial court, nonetheless requires reversal of the trial court's judgment, for reasons of policy. . . . In addition, the plain error doctrine is reserved for truly extraordinary situations [in which] the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings. . . . Plain error is a doctrine that should be invoked sparingly. . . . Implicit in this very demanding standard is the notion . . . that invocation of the plain error doctrine is reserved for occasions requiring the reversal of the judgment under review. . . . An appellate court addressing a claim of plain error first must determine if the error is indeed plain in the sense that it is patent [or] readily discernable on the face of a factually adequate record, [and] also . . . obvious in the sense of not debatable. . . . This determination clearly requires a review of the plain error claim presented in light of the record.

"Although a complete record and an obvious error are prerequisites for plain error review, they are not, of themselves, sufficient for its application. . . . [I]n addition to examining the patent nature of the error, the reviewing court must examine that error for the grievousness of its consequences in order to determine whether reversal under the plain error doctrine is appropriate. A party cannot prevail under plain error unless it has demonstrated that the failure to grant relief will result in manifest injustice." (Internal quotation marks omitted.) *Schimenti* v. *Schimenti*, 181 Conn. App. 385, 392–93, 186 A.3d 739 (2018). "Put another way, plain error review is reserved for only the most egregious

errors." *State* v. *McClain*, 324 Conn. 802, 814, 155 A.3d 209 (2017).

In cases in which a claim of judicial impropriety "strikes at the very core of judicial integrity and tends to undermine public confidence in the established judiciary"; *Felix* v. *Hall-Brooke Sanitarium*, 140 Conn. 496, 501, 101 A.2d 500 (1953); an appellate court properly may reverse the judgment of a trial court on the basis of unpreserved claims of judicial bias under the plain error doctrine. See, e.g., *State* v. *D'Antonio*, 274 Conn. 658, 674, 877 A.2d 696 (2005). Remarking on such situations, our Supreme Court has noted that such a review is proper when "[i]t is quite evident from our review of the trial transcript that a serious departure from these high standards [of impartiality] occurred in the court below." *Cameron* v. *Cameron*, 187 Conn. 163, 169, 444 A.2d 915 (1982).

We acknowledge that the court's sua sponte comments as to the sufficiency of the plaintiff's evidence were unnecessary. They did not, however, rise to the level of judicial bias. The court situated its comments within the context of a scheduling concern, in an attempt to discern how much time would be required to try the rest of the case. The court qualified its remarks by saying, "I have not come to a conclusion on this issue" and "it may well be." The court also gave the defendants adequate time to prepare for the witness in light of the defendants' objection that they lacked notice. Moreover, our review of the record of the trial court proceedings is devoid of any other similar comment, and the defendants have failed to demonstrate any other conduct that would suggest that the proceeding was tainted by bias. Accordingly, we conclude that the court's comments did not rise to the level of being so egregious as to demand a reversal of the court's judgment.

V

Lastly, the defendants claim that the plaintiff's inequitable conduct and the doctrine of unclean hands should have precluded the court from granting the equitable relief sought by the plaintiff.[23] In essence, the defendants argue that "incontestable evidence" establishes that the plaintiff engaged in "inequitable" and "repeated" conduct and has "evinced unclean hands repeatedly in this litigation" that resulted in an assault "on the integrity of the court."[24] In support of that contention, the defendants direct our attention to the plaintiff's filing of (1) the motion for default and judgment made during the statutorily mandated mediation period, as well as the multiple motions made for default for "nonexistent" defaults, and (2) the Rhodes affidavit, which "unambiguously represented to the court that the notice of default . . . had been given to the defendants by 'certified mail' . . . ."[25] The plaintiff counters that the court properly exercised its discretion in

---

[23] The defendants pleaded unclean hands as a special defense.

[24] These arguments were presented—in slightly different form—to the trial court in the defendants' request to file a surreply to the plaintiff's second motion for summary judgment. There, the defendants cited, in passing, to Practice Book § 17-48. That provision provides the court with instructions on how to address affidavits that are given in bad faith or solely for the purpose of delay, including the awarding of attorney's fees to the party that has been impacted by such behavior. It further authorizes contempt proceedings as well as judicial discipline for attorneys who engage in such conduct. We can see no evidence in the record before us that the defendants ever requested that the court provide any of those remedies.

[25] In Connecticut, upon initiation of foreclosure proceedings, the parties have the option of participating in court sponsored foreclosure mediation. See *Ocwen Loan Servicing, LLC* v. *Mordecai*, 209 Conn. App. 483, 486–87 n.5, 268 A.3d 704 (2021) ("[d]uring the pendency of mediation, [a] litigation hold is placed on the case, during which time a mortgagee is prohibited from making any motion, request or demand of a mortgagor, except as it may relate to the mediation program; General Statutes § 49-31*l* (c) (6); and no judgment of strict foreclosure or foreclosure by sale may be rendered against the mortgagor during the mediation period" (internal quotation marks omitted)).

rejecting the unclean hands defense. The plaintiff argues that neither the "simple misfiling of a default motion" during the mediation period—which was promptly withdrawn—nor the various motions for default that were filed over the lengthy course of this litigation rise to the level required to substantiate an unclean hands defense. The plaintiff also argues that it made no representation that the notice of acceleration, as averred in the Rhodes affidavit to have been "given" via certified mail, had been received by the defendants and that, moreover, the evidence at trial demonstrated that the notice of acceleration was mailed via both first class mail and certified mail. In essence, the plaintiff argues that the court properly determined that the defendants had not proven their special defense that the plaintiff conducted itself with unclean hands. We agree with the plaintiff.

Our standard of review for this claim is well established. "[A]pplication of the doctrine of unclean hands rests within the sound discretion of the trial court. . . . The exercise of [such] equitable authority . . . is subject only to limited review on appeal. . . . The only issue on appeal is whether the trial court has acted unreasonably and in clear abuse of its discretion. . . . In determining whether the trial court abused its discretion, this court must make every reasonable presumption in favor of [the trial court's] action." (Internal quotation marks omitted.) *Ulster Savings Bank* v. *28 Brynwood Lane, Ltd.*, 134 Conn. App. 699, 711, 41 A.3d 1077 (2012).

"[A]n action to foreclose a mortgage is an equitable proceeding. . . . It is a fundamental principle of equity jurisprudence that for a complainant to show that he is entitled to the benefit of equity he must establish that he comes into court with clean hands. . . . The clean hands doctrine is applied not for the protection of the parties but for the protection of the court. . . .

It is applied not by way of punishment but on considerations that make for the advancement of right and justice. . . . The doctrine of unclean hands expresses the principle that where a plaintiff seeks equitable relief, he must show that his conduct has been fair, equitable and honest as to the particular controversy in issue. . . . Unless the plaintiff's conduct is of such a character as to be condemned and pronounced wrongful by honest and fair-minded people, the doctrine of unclean hands does not apply." (Citations omitted; internal quotation marks omitted.) *Thompson* v. *Orcutt*, 257 Conn. 301, 310, 777 A.2d 670 (2001). "The party seeking to invoke the clean hands doctrine to bar equitable relief must show that his opponent engaged in wilful misconduct with regard to the matter in litigation. . . . The trial court enjoys broad discretion in determining whether the promotion of public policy and the preservation of the courts' integrity dictate that the clean hands doctrine be invoked." (Internal quotation marks omitted.) *Ridgefield* v. *Eppoliti Realty Co.*, 71 Conn. App. 321, 335, 801 A.2d 902, cert. denied, 261 Conn. 933, 806 A.2d 1070 (2002).

The court did not abuse its discretion in rejecting the defendants' special defense that the plaintiff acted with unclean hands. The court considered the defendants' arguments and noted that, although they pleaded thirteen special defenses, including unclean hands, they offered "little evidence" to establish any of them. Although the court found that that the Rhodes affidavit had "failed to establish" that notice had been made via first class mail, or that notice mailed by certified mail "was actually delivered," it did not conclude that the affidavit was executed in bad faith or that it contained any fraudulent misrepresentations, especially in light of evidence that the notice of acceleration ultimately was delivered by both first class mail and certified mail.

The motion for default that was filed during the statutorily mandated mediation period—in 2014—was promptly withdrawn after the defendants' objection. The long, contentious route that this case has taken has resulted in delay of the plaintiff's relief—while it is undisputed that the defendants have remained in the property in continued default of their obligations on the note and mortgage—for more than one decade. After considering the defendants' arguments, the court determined that "nothing in the case at bar persuades this court that equity requires anything other than a judgment in the plaintiff's favor." We cannot disagree with that determination. The court's denial of the equitable relief requested by the defendants was not an abuse of its discretion.

The judgment is affirmed and the case is remanded for the purpose of making a new finding as to the amount of the debt, for the setting of new law days, and for other proceedings according to law.

In this opinion the other judges concurred.