******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# OFFICE OF CHIEF DISCIPLINARY COUNSEL
*v.* NICKOLA J. CUNHA
(AC 48276)

Cradle, C. J., and Alvord and Moll, Js.

*Syllabus*

The petitioner appealed from the trial court's judgment concluding that the respondent attorney violated various Rules of Professional Conduct in connection with three grievances that had been filed against her. It claimed that the court erred in holding that the litigation privilege applied to statements that the respondent made during grievance proceedings so as to preclude further disciplinary action based on those statements. The respondent filed a cross appeal, claiming that the court's findings of misconduct were not factually or legally supported. *Held*:

The trial court improperly determined that the respondent was immune from further disciplinary proceedings for her alleged misconduct at a grievance hearing, as, although the litigation privilege applies to statements made during grievance proceedings, the immunity afforded by the litigation privilege extends only to certain retaliatory lawsuits and does not shield an attorney who is alleged to have engaged in professional misconduct during grievance proceedings from further discipline stemming from that misconduct.

The respondent's claim that the trial court's findings of misconduct were not factually and legally supported was unavailing, as the court's findings were supported by the evidence in the record.

Argued December 10, 2025—officially released June 16, 2026

*Procedural History*

Presentment by the petitioner for the alleged professional misconduct of the respondent, brought to the Superior Court in the judicial district of New Haven and tried to the court, *Abrams, J.*; judgment suspending the respondent from the practice of law for two and one-half years, from which the petitioner appealed to this court and the respondent cross appealed. *Reversed in part; further proceedings.*

*Leanne M. Larson*, first assistant chief disciplinary counsel, for the appellant-cross appellee (petitioner).

*Nickola J. Cunha*, self-represented, the appellee-cross appellant (respondent).

CRADLE, C. J. In this presentment action stemming from three separate grievances, the petitioner, the Office

of Chief Disciplinary Counsel, appeals and the respondent, Nickola J. Cunha, cross appeals from the judgment of the trial court concluding that the respondent violated several Rules of Professional Conduct but that she was entitled to the absolute immunity afforded by the litigation privilege as to certain of the allegations of misconduct filed against her. On appeal, the petitioner claims that the court erred in holding that the litigation privilege applies to statements made during grievance proceedings so as to preclude further disciplinary action based on those statements.[1] On cross appeal, the respondent claims that the court's findings that she violated certain rules of professional conduct were not factually and legally supported. Because we agree with the petitioner that, although the litigation privilege applies to statements made during grievance proceedings, it does not shield attorneys from disciplinary action for misconduct during those proceedings, we reverse the judgment of the court as to its determination that certain allegations of the first count of the presentment are entitled to absolute immunity under the litigation privilege. We affirm the judgment in all other respects.

The following facts, which the reviewing committee of the Statewide Grievance Committee (reviewing committee) found by clear and convincing evidence, and procedural history are relevant to our resolution of the claims on appeal and cross appeal. The first grievance underlying this presentment action was filed on October 11, 2019, by Attorney Susan Cousineau, who was the guardian ad litem in a family case in which the respondent represented the plaintiff mother.[2] On June

[1] The petitioner also claims that the court violated its right to due process when it sua sponte held that certain of the allegations of misconduct were barred by the litigation privilege without affording the petitioner an opportunity to be heard on that issue. Because we agree with the petitioner that the court erred in holding that the litigation privilege precluded it from pursuing disciplinary action based on misconduct during a grievance proceeding, we need not address the petitioner's due process claim.

[2] In October 2019, the respondent alleged during a courtroom proceeding that, as the guardian ad litem, Cousineau was a mandated reporter, and Cousineau's failure to refer the case to the Department of Children and Families constituted a criminal act. This allegation by the

30, 2021, the respondent sent an email to the caseflow coordinator in response to the caseflow coordinator's attempt to schedule a status conference that had been requested by Cousineau and opposing counsel in the matter. In that email, the respondent stated, inter alia: "[Cousineau's] and [opposing counsel's] use of the court as a means of causing my client unnecessary stress and financial hardship is unacceptable and now against the law." The petitioner filed additional allegations of misconduct based on that accusation.

At the hearing before the reviewing committee (grievance hearing), when asked to explain the basis of her allegation in the email that Cousineau was engaged in conduct that was "against the law," the respondent replied, inter alia, that Cousineau conspired with opposing counsel to request a status conference so that she could increase her fees, in violation of the "RICO Act."[3]

The reviewing committee found that the foregoing accusations by the respondent constituted violations of the following Rules of Professional Conduct: rule 4.4 (a), in that the accusations had no substantial purpose other than to embarrass, delay, or burden Cousineau; rule 3.4 (7), in that the accusations of criminal charges were made solely with the goal of obtaining an advantage in the ongoing litigation; and rule 8.4 (4), in that the respondent's accusations were prejudicial to the administration of justice.[4]

---

respondent was the basis for the initial filing of the grievance, and the reviewing committee found that the respondent's accusation constituted misconduct in that she, inter alia, knowingly made a statement for no substantial purpose other than to embarrass or burden Cousineau in violation of rules 3.3 (a) (1), 3.4 (5) and (7), 4.4 (a), and 8.4 (1), (3) and (4) of the Rules of Professional Conduct and directed that these findings of misconduct be included in the presentment. The trial court disagreed with the reviewing committee's foregoing findings of misconduct and found in favor of the respondent as to those findings. The petitioner has not challenged the court's judgment as to those findings.

[3] The court noted that "[o]ne is left to assume that the respondent was referring to 18 U.S.C. § 1961 et seq., the Racketeer Influenced [and] Corrupt Organizations Act."

[4] The reviewing committee further found that the respondent engaged in misconduct when, on December 3, 2021, the respondent filed a motion

During the grievance hearing, the respondent also "made several statements in which she accused [Cousineau] of the crime of conspiracy. She maintained that [Cousineau] conspired with [the other attorneys in the matter] to keep information from [the court] and that this conduct also constituted a RICO violation. The respondent also maintained that [Cousineau] conspired with Dr. [Linda] Smith and other professionals to steer business to a particular psychologist. The respondent failed to provide any factual or legal basis to support these accusations."

The reviewing committee further found that the respondent's testimony at the grievance hearing regarding the foregoing allegations of conspiracy constituted violations of the following Rules of Professional Conduct: rule 3.1, in that her statements were frivolous and without merit; rule 8.4 (3), in that her actions constituted misrepresentation to the reviewing committee; rule 4.4 (a), in that her actions had no substantial purpose other than to embarrass, delay, or burden Cousineau; rule 3.4 (7), in that her actions involved a threat to present criminal charges solely to gain an advantage in the ongoing litigation; and rule 8.4 (4), in that her statements were prejudicial to the administration of justice.

On May 4, 2022, the petitioner, at the direction of the reviewing committee, filed a presentment against the respondent based on the foregoing findings of misconduct arising from the grievance filed by Cousineau.

The second grievance underlying this presentment action was filed by Jennifer Jessica Recalde in May 2021.

to continue her grievance hearing, which was scheduled for December 8, 2021, citing a conflict with a hearing scheduled in Superior Court. At the time she filed the continuance request for the grievance hearing, the court hearing already had been continued. The reviewing committee found that the respondent's failure to inform it that her scheduling conflict had been resolved constituted violations of rules 3.3 (a) (1) and 8.4 (3) and (4) of the Rules of Professional Conduct, and it directed that these violations be included in the presentment. The court later found in favor of the respondent as to these findings of misconduct and the petitioner has not challenged that holding on appeal.

"[Recalde] retained the respondent on September 18, 2020, to represent her in a postjudgment custody matter. [Recalde] and the respondent signed a fee agreement on that date and [Recalde] provided the respondent with a $5000 retainer at that time. Over the next three months, [Recalde] sent frequent text messages to the respondent seeking legal advice and asking that action be taken in the court matter. The respondent failed to reply to many contact attempts by [Recalde] and failed to provide definitive legal advice. While the respondent replied on occasion to [Recalde's] texts, suggesting potential courses of action and promising to file various motions, the respondent never provided any definitive guidance as to what actions should be taken. The respondent never filed any motions with the court [on behalf of Recalde].

"In January of 2021, [Recalde] retained successor counsel in the matter. Successor counsel quickly filed an emergency ex parte motion for custody, which was granted by the court on February 3, 2021. Both [Recalde] in a text [message], and successor counsel in an email, requested an accounting of the respondent's fee, but no accounting was ever received from the respondent.

"The respondent did not file an answer to the grievance complaint.

"By letter dated December 28, 2021, disciplinary counsel requested that the respondent provide her with a copy of [Recalde's] file and an itemization of her time. The respondent did not comply with the request. . . .

"In an email from the respondent to the disciplinary counsel dated April 29, 2022, responding to disciplinary counsel's inquiry to the respondent regarding proposed exhibits for the hearing in this matter, the respondent wrote, inter alia, that she would no longer 'sit back and continue to allow you and your cohorts to harass me, intimidate me and shed me in [a] poor light to the public, you are sadly mistaken. You see for many years I've been collecting evidence against each of you and I've had enough . . . . God willing your end, along with the rest of

the professionals that violate everyone's rights on a daily basis, is creeping up on you. I hope you have adequately informed [Recalde] that this is a public matter and I will be allowed to use information gathered from her file. Not that I believe you care, but there are children in this matter and [maybe] [Recalde] cares.'"

On the basis of the foregoing, the reviewing committee found that the respondent violated the following Rules of Professional Conduct: rules 1.1, 1.3 and 1.4 (a) (2), (3) and (4), in that the respondent displayed a lack of competence and diligence, the respondent failed to consult with Recalde, failed to keep her reasonably informed, and failed to promptly comply with reasonable requests for information; rule 1.5 (a), in that her fee was unreasonable given the lack of results; and rule 1.15 (e), in that she failed to provide an accounting of her fees. The reviewing committee further found that the respondent's actions in failing to respond to this grievance complaint violated rule 8.1 (2) of the Rules of Professional Conduct and Practice Book § 2-32.

At the direction of the reviewing committee, the petitioner thereafter amended the presentment to include the foregoing findings of misconduct.

The third grievance underlying this presentment action was filed by Attorney Edward Nusbaum on November 20, 2020. "[Nusbaum] originally served as counsel for the defendant [mother] in a divorce and custody action [(divorce action)] filed in . . . Bridgeport . . . . On August 27, 2020, the respondent filed an appearance in lieu of [Nusbaum] to represent the defendant. . . . In the [divorce] action, two orders had been entered regarding custody and visitation, dated June 10 . . . [and] 24, 2020 . . . . On December 1, 2020, the respondent's client filed an application for relief from abuse in the New Haven Superior Court . . . . Although the application for relief [from abuse] referenced the docket number of the [divorce] action, the application did not disclose the existing custody orders from the [divorce] action. Furthermore, the affidavit of the respondent's client

which had been attached to the application for relief [from abuse] stated that the respondent's client had not been involved as a party in a Connecticut case concerning the custody or visitation and did not know of other civil cases in Connecticut that could affect the [application for relief from abuse]. The respondent took her client's acknowledgement on the affidavit and participated in the preparation and filing of the application. The New Haven Superior Court granted an ex parte restraining order on December 1, 2020. That same day, December 1, 2020, the [plaintiff father] filed an emergency motion to vacate the restraining order. On December 2, 2020, the court . . . held a hearing on the matter and vacated the restraining order. In its order, the court noted that, if it had been aware of the orders in the [divorce] action, it would not have granted the restraining order.

"The respondent did not file a written response to the grievance complaint."

On the basis of the foregoing, the reviewing committee found that the respondent violated the following Rules of Professional Conduct: rule 3.3 (a) (1), in that the respondent made a knowingly false statement to a tribunal; rule 3.3 (a) (2), in that the respondent failed to inform the tribunal of legal authority known to her to be directly adverse to the position of her client; rule 3.3 (a) (3), in that the respondent offered evidence that she knew to be false; rule 3.3 (b), in that the respondent knew that her client was engaging in fraudulent conduct by failing to disclose the orders that had been entered in the divorce action but failed to take reasonable remedial measures; rule 3.3 (d), in that the respondent failed to inform the court in an ex parte proceeding of all of the material facts known to her to make an informed decision; rule 3.4 (2), in that the respondent engaged in the falsification of evidence or counselling or assisting her client to testify falsely; rule 8.4 (3), in that the respondent engaged in conduct constituting dishonesty, fraud, deceit or misrepresentation; and rule 8.4 (4), in that the respondent engaged in conduct prejudicial to

the administration of justice. The reviewing committee further found that the respondent violated rule 8.1 (2) of the Rules of Professional Conduct and Practice Book § 2-32 by failing to respond to this grievance complaint and failing to establish good cause for failing to respond.

At the direction of the reviewing committee, the petitioner thereafter amended the presentment to include the foregoing findings of misconduct.[5]

The court, *Abrams, J.*, held a hearing on the presentment, at which Cousineau, Recalde, Nusbaum, and the respondent testified, and both the petitioner and the respondent introduced into evidence several exhibits for the court's consideration. Following the filing of posttrial briefs by the petitioner and the respondent, the court filed a memorandum of decision on October 10, 2024, wherein it found in favor of the respondent as to certain of the reviewing committee's findings of misconduct but affirmed the remaining findings of misconduct. The court addressed separately each of the three grievances as follows.

The court first addressed the grievance filed by Cousineau. As to the respondent's assertions, set forth in an email to the caseflow coordinator, that Cousineau was engaging in conduct that was "against the law," the court explained: "Even if there were a shred of evidentiary basis for [the respondent's] claim [that Cousineau engaged in a conspiracy that constituted a RICO violation by conspiring with another attorney to request a status conference with the court in order to increase their legal bills], which there is not, even a first year law student would recognize that under no conceivable circumstances would RICO apply to a request of a status conference in a state court family case. The respondent's

---

[5]Nusbaum also alleged that the respondent violated the Rules of Professional Conduct during a dispute relating to the proceeds from the sale of the marital home in the divorce action. The reviewing committee agreed, but the court disagreed and found in favor of the respondent on those allegations of misconduct. The court's judgment in this regard has not been challenged by the petitioner on appeal.

leveling of such an accusation was reckless at best and the court finds by clear and convincing evidence that the respondent recognized that the allegation was false, both that Cousineau requested the status conference to make more money and the fact that it constituted a RICO violation, at the time she made it. As a result, the court enters judgment against the respondent on the allegations [that she violated rules 4.4 (a), 3.4 (7) and 8.4 (4) of the Rules of Professional Conduct]."

The court held, however, that the respondent's testimony at the grievance hearing was entitled to the absolute immunity afforded by the litigation privilege for her testimony at the grievance proceeding. The court reasoned, inter alia, that, "[i]f attorneys testifying in grievance hearings do so with the fear that their testimony will subject them to additional grievance claims, they may be inhibited from speaking freely." The court therefore found in favor of the respondent as to the statements that she made during her testimony at the grievance hearing.

In sum, as to the grievance filed by Cousineau, the court found by clear and convincing evidence that the respondent violated rules 4.4 (a), 3.4 (7) and 8.4 (4) of the Rules of Professional Conduct.

The court next addressed the grievance filed by Recalde. The court explained: "All of the claims in this presentment involve the respondent refusing to communicate and/or cooperate with someone, be it [Recalde], her subsequent attorney, or the grievance authorities. To the extremely limited extent the respondent was willing to recognize these failures during her testimony before this court, she attributed them to . . . the pressures of work. Experience tells us that the pressures of life challenge many people, lawyers included, and can often interfere with one's ability to meet professional responsibilities. It is at that precise point where lawyers are under an obligation to communicate candidly with those affected by their inability to meet their obligations. However, the record reveals that the respondent did the exact

opposite; when she became overwhelmed, she refused to communicate, ignoring the needs of others. In addition, the statements made by the respondent in her email to the disciplinary counsel clearly constitute an attempt by the respondent to intimidate both the disciplinary counsel and [Recalde] to abandon the matter.

"As relates to the respondent's failure to provide an accounting of [Recalde's] retainer, the commentary to rule 1.15 of the Rules of Professional Conduct provides that '[a] lawyer should hold property of others with the care required of a professional fiduciary. . . .' Subsection (b) of rule 1.15 requires a lawyer to keep '[c]omplete records of such account funds. . . .' The respondent failed to do so in regard to the retainer provided to her by [Recalde].

"As relates to this grievance [filed by Recalde] and based on the foregoing, the court finds against the respondent on each and every element of this presentment by clear and convincing evidence and finds that the respondent violated the following Rules of Professional Conduct: 1.1, 1.3, 1.4 (a) (2), 1.4 (a) (3), 1.1 (a) (4), 1.5 (a), 1.15 (a), 8.1 (2), and 8.4 (4). The court also finds that the respondent violated [Practice Book] § 2-32 (a) (1) . . . and that, while the respondent did perform some work on [Recalde's] behalf, she did not earn the entire $5000 and is ordered to return $3500 to [Recalde]."

The court finally addressed the grievance filed by Nusbaum. As to the claim related to the filing of a false affidavit, the court explained: "There is really no defense to the respondent's preparation and filing of the application for relief from abuse and the accompanying affidavit that falsely claimed that there were no pending actions or current orders in effect. She claims that the pending action was listed in the application but does not really have any answer to the question of why the affidavit does not list the action or orders in effect for the benefit of the judge, as it is clearly designed to do. As a result, the court finds by clear and convincing evidence that the respondent violated the Rules of Professional Conduct

that relate to the false affidavit, with the exception of rule 3.3 (a) (2), which the court reads as applying to the failure of an attorney to bring relevant legal authority to the court's attention. In this case, the respondent's actions relate to a failure to bring facts to the court's attention rather than legal authority."

As to the claims relating to the respondent's failure to respond to the grievance, the court found that "[t]he record clearly demonstrates that the respondent failed to respond to this grievance and, as a result, is in violation of rule 8.1 (2) of the Rules of Professional Conduct and [Practice Book] § 2-32 . . . .

"Based on the foregoing, as relates to this grievance [filed by Nusbaum], the court finds by clear and convincing evidence that the respondent violated the following Rules of Professional Conduct: 3.3 (a) (1), 3.3 (a) (3), 3.3 (b), 3.3 (d), 3.4 (2), 8.1 (2), and 8.4 (3). The court also finds that the respondent violated [Practice Book] § 2-32 (a) (1) . . . ."

The court then considered the proper remedy for the foregoing violations[6] and imposed, inter alia, a total of two and one-half years of suspension from the practice of law for the three grievances "to commence immediately upon the conclusion of the respondent's disbarment period."[7]

The petitioner thereafter filed a motion to reargue or for reconsideration of the court's application of the litigation privilege to the statements made by the respondent during the proceedings on the grievance filed by

---

[6]The respondent had been disbarred by the Superior Court on January 25, 2022.

[7]The court reasoned: "[T]he court is left to conclude that the respondent violated a myriad of duties, that a great deal of her behavior does not evidence a healthy mental state, and, at least in the case of [Recalde], that there was the potential for serious injury. As relates to the aggravating factors, almost all of them exist in this case, with the possible exception that most of the issues do not appear to be based on a dishonest or selfish motive on the part of the respondent. In the court's opinion, the most prominent aggravating factor is the respondent's disciplinary history, particularly her current disbarment. As relates to mitigating factors,

Cousineau. The petitioner argued that, although the litigation privilege affords immunity for statements made during grievance proceedings, that immunity applies only to retaliatory lawsuits, not disciplinary proceedings stemming from misconduct that takes place during those proceedings.[8]

On November 22, 2024, the court filed a memorandum of decision wherein it denied the petitioner's motion, reasoning that there is no precedent that would support the petitioner's alleged limitation of the immunity afforded by the litigation privilege to the filing of a grievance for misconduct during a grievance proceeding. The court explained: "The fact that statements made by an attorney in a grievance hearing are absolutely privileged in every forum except a subsequent grievance hearing strikes the court as antithetical to the principles of due process, potentially trapping attorneys in an endless vortex of disciplinary action." This appeal and cross appeal followed.

I

We first address the petitioner's claim on appeal that the court erred in concluding that the litigation privilege precluded the filing of a grievance on the basis of the respondent's testimony during a grievance hearing. The petitioner argues that, although the litigation privilege applies to misconduct allegedly committed during grievance proceedings, it does not afford immunity from further disciplinary proceedings stemming from that misconduct. We agree.

The question of "[w]hether absolute immunity applies to the cause of action at issue is a question of law subject

the court is willing to concede that the respondent has not demonstrated a pattern of dishonesty, at least as it regards money.

"On the whole, the court considers it a serious question whether the respondent should ever be allowed to practice law again, but that issue is not before the court. Rather, it will be an issue for the reinstatement panel should the respondent apply for reinstatement at the conclusion of her suspension period." (Footnote omitted.)

[8]The respondent did not file an objection to the petitioner's motion to reargue.

to de novo review." *Scholz* v. *Epstein*, 341 Conn. 1, 9, 266 A.3d 127 (2021). "[U]nder the litigation privilege, [a]n attorney at law is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding, or in the institution of, or during the course and as a part of, a judicial proceeding in which he participates as counsel, if it has some relation to the proceeding." (Internal quotation marks omitted.) Id. "The purpose of affording absolute immunity to those who provide information in connection with judicial and quasi-judicial proceedings is that in certain situations the public interest in having people speak freely outweighs the risk that individuals will occasionally abuse the privilege by making false and malicious statements." (Internal quotation marks omitted.) Id., 10.

Our Supreme Court has explained, however, "that there are limits to the application of the litigation privilege to attorney conduct and communications. . . . Specifically, attorneys are not protected by absolute immunity against claims for abuse of process, vexatious litigation, or malicious prosecution. . . . This is because whether and what form of immunity applies in any given case is a matter of policy that requires a balancing of interests . . . ." (Citations omitted; internal quotation marks omitted.) Id.

This court has held that the litigation privilege extends absolute immunity to statements made to the attorney disciplinary authority by an attorney who is the subject of a grievance complaint. *Cohen* v. *King,* 189 Conn. App. 85, 90–91, 206 A.3d 188 (2019), cert. denied, 336 Conn. 925, 246 A.3d 986 (2021).

"[T]he privilege protects access to the courts inasmuch as retaliatory lawsuits [that might] cause the removal of [an] adversary's counsel would compromise the judicial process, and there exist other remedies, such as the court's contempt powers and other *disciplinary proceedings*, to deter attorney misconduct." (Emphasis added; internal quotation marks omitted.) *Scholz* v. *Epstein*, supra, 341 Conn. 10. In discussing those other remedies that are available when an attorney is alleged to

have engaged in misconduct in the context of a judicial or quasi-judicial proceeding, our Supreme Court has explained: "[S]afeguards other than civil liability exist to deter or preclude attorney misconduct or to provide relief from that misconduct. A dissatisfied litigant may file a motion to open the judgment . . . or may seek relief by filing a grievance against the offending attorney under the Rules of Professional Conduct, which may result in sanctions such as disbarment. . . . Additionally, [j]udges of the Superior Court possess the inherent authority to regulate attorney conduct and to discipline members of the bar. . . . In exercising their inherent supervisory authority, the judges have authorized grievance panels and reviewing committees to investigate allegations of attorney misconduct and to make determinations of probable cause. . . . Further, the judges have empowered the statewide grievance committee to file presentments in Superior Court seeking judicial sanctions against those claimed to be guilty of misconduct. . . . In carrying out these responsibilities, these bodies act as an arm of the court. . . . The range of sanctions available to the court include those set forth in Practice Book §§ 2-37 and 2-44, and General Statutes § 51-84, including fines, suspension and disbarment. Courts also may dismiss a case or impose lesser sanctions for perjury or contempt. . . . Accordingly, a formidable array of penalties, including referrals to the [S]tatewide [G]rievance [C]ommittee for investigation into alleged misconduct, is available to courts and dissatisfied litigants who seek redress in connection with an attorney's fraudulent conduct. Indeed, we not only encourage trial courts to use these tools to protect the integrity of the judicial system but expect them to do so in appropriate circumstances." (Citations omitted; footnotes omitted; internal quotation marks omitted.) *Simms* v. *Seaman*, 308 Conn. 523, 552–54, 69 A.3d 880 (2013).

On the basis of the foregoing, it is clear that, although the litigation privilege applies to statements made during grievance proceedings, the immunity afforded by the litigation privilege extends only to certain retaliatory

lawsuits, and it does not shield an attorney who is alleged to have engaged in professional misconduct from further discipline. This conclusion is supported by the principle that "[a]n attorney as an officer of the court in the administration of justice, is *continually* accountable to it for the manner in which he exercises the privilege which has been accorded him. His admission is upon the implied condition that his continued enjoyment of the right conferred is dependent upon his remaining a fit and safe person to exercise it, so that when he, *by misconduct in any capacity*, discloses that he has become or is an unfit or unsafe person to be entrusted with the responsibilities and obligations of an attorney, his right to continue in the enjoyment of his professional privilege may and ought to be declared forfeited." (Emphasis in original; internal quotation marks omitted.) *Office of Chief Disciplinary Counsel* v. *Vena*, 236 Conn. App. 39, 50, 347 A.3d 945 (2025).

Accordingly, the respondent's testimony at the grievance hearing wherein she accused Cousineau of, inter alia, conspiring with others to withhold information from the court was protected by the litigation privilege in that she was immune from any retaliatory lawsuit by Cousineau on the basis of that accusation, but the litigation privilege did not shield her from further disciplinary proceedings based on those allegedly baseless accusations. The respondent has not provided any authority, nor are we aware of any, that supports a contrary conclusion. We therefore agree with the petitioner that the court improperly determined that the respondent was immune from disciplinary proceedings for her alleged misconduct at the grievance hearing.

II

We next address the respondent's claim on cross appeal that the court's findings of misconduct, stemming from the factual findings of the reviewing committee, were not factually and legally supported. "Factual findings of the reviewing committee are reviewed under the clearly erroneous standard. Although the [S]tatewide [G]rievance

[C]ommittee is not an administrative agency . . . the court's review of its conclusions is similar to the review afforded to an administrative agency decision. . . . The burden is on the [S]tatewide [G]rievance [C]ommittee to establish the occurrence of an ethics violation by clear and convincing proof. . . . Upon appeal, the court shall not substitute its judgment for that of the Statewide Grievance Committee or reviewing committee as to the weight of the evidence on questions of fact. The court shall affirm the decision of the committee unless the court finds that substantial rights of the respondent have been prejudiced because the committee's findings, inferences, conclusions, or decisions are . . . (5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record . . . . [W]hen we are required to interpret the Rules of Professional Conduct, our review is plenary, and the rules of statutory interpretation apply." (Citations omitted; internal quotation marks omitted.) *Cohen* v. *Statewide Grievance Committee*, 339 Conn. 503, 520–21, 261 A.3d 722 (2021).

"The trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . We cannot retry the facts or pass on the credibility of the witnesses. A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Disciplinary Counsel* v. *Parnoff*, 158 Conn. App. 454, 474, 119 A.3d 621 (2015), aff'd, 324 Conn. 505, 152 A.3d 1222 (2016). With these principles in mind, we review each of the respondent's challenges to the trial court's findings of misconduct in turn.

## A

As to the grievance filed by Cousineau, the respondent first claims that the court's findings that she violated rules 4.4 (a) and 3.4 (7) of the Rules of Professional

Conduct are not legally supported based on the clear and unambiguous language of those rules.[9] We disagree.

The respondent first challenges the finding that she violated rule 4.4 (a) of the Rules of Professional Conduct, which provides in relevant part: "*In representing a client*, a lawyer shall not use means that have no substantial purpose other than to embarrass, delay, or burden a third person . . . ." (Emphasis added.) The respondent argues that her testimony at the grievance hearing could not constitute a violation of rule 4.4 (a) because she was not, at that time, representing a client.[10] In so arguing, the respondent ignores the alleged conduct that gave rise to Cousineau's grievance, namely, the accusation contained in the email to the caseflow coordinator that Cousineau was engaging in conduct that was "against the law." It cannot be disputed that that accusation was asserted while the respondent was representing a client. Although the reviewing committee and the court recounted the respondent's explanation of that accusation, which she provided during the grievance hearing, that does not alter the fact that the grievance, and thus the finding of misconduct, stemmed from the accusation contained in the email to the caseflow coordinator asserted by the respondent while she was representing a client.

The respondent also challenges the court's determination that she violated rule 3.4 (7) of the Rules of Professional Conduct, which provides that "[a] lawyer shall not

[9]Although the respondent also challenges on that same basis the court's finding that she violated rule 8.4 (4) of the Rules of Professional Conduct, the respondent has failed to brief this claim. We therefore deem it abandoned. See *Hudson City Savings Bank* v. *Hellman*, 234 Conn. App. 45, 72 n.16, 343 A.3d 781 ("Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . [When] a claim is asserted in the statement of issues but thereafter receives only cursory attention in the brief without substantive discussion or citation of authorities, it is deemed to be abandoned." (Internal quotation marks omitted.)), cert. denied, 353 Conn. 920, 345 A.3d 809 (2025).

[10]We note that this is the sole basis of the respondent's challenge to the finding that she violated rule 4.4 (a) of the Rules of Professional Conduct.

. . . [p]resent, participate in presenting, or threaten to present criminal charges solely to obtain an advantage *in a civil matter.*" (Emphasis added.) The respondent argues that her allegation that Cousineau had engaged in conduct in violation of the RICO Act was asserted in her testimony at the grievance committee, which is not a "civil matter" and, therefore, rule 3.4 (7) does not apply. Again, the respondent's argument is misplaced in that her testimony at the grievance hearing was simply an explanation of the basis for the accusation contained in the email that she sent to the caseflow coordinator in the underlying family case, which is a civil matter. The respondent's argument therefore is unavailing.

B

The respondent next challenges the court's findings of misconduct stemming from the grievance filed by Recalde. The respondent claims that the court's findings that she violated rules 1.1, 1.3, 1.4 (a) (2), (3) and (4), and 1.5 (a)[11] of the Rules of Professional Conduct were not factually or legally supported. We are not persuaded.

As to the court's findings that the respondent violated rules 1.1, 1.3, and 1.4 (a) (2), (3) and (4) of the Rules of Professional Conduct, which, generally, require that a lawyer provide a client with competent representation, act with reasonable diligence and promptness, and effectively communicate with his or her clients, the respondent essentially asks this court to retry the evidence and find facts favorable to her. It is axiomatic that "[a]ppellate courts do not examine the record to determine whether the trier of fact could have reached a different conclusion. Instead, we examine the trial court's conclusion in order to determine whether it was legally correct and

---

[11]Although the respondent also lists the court's finding of the violation of 8.4 (4) of the Rules of Professional Conduct as error, she does not provide any argument or analysis pertaining to this rule. We therefore deem this claim abandoned. See *Hudson City Savings Bank* v. *Hellman*, 234 Conn. App. 45, 72 n.16, 343 A.3d 781, cert. denied, 353 Conn. 920, 345 A.3d 809 (2025). The respondent does not challenge the finding that she violated Practice Book § 2-32 (a) (1) by not responding to the grievance.

factually supported. . . . This distinction accords with our duty as an appellate tribunal to review, and not to retry, the proceedings of the trial court." **(Citation omitted; internal quotation marks omitted.)** *First National Bank of Litchfield* v. *Miller*, 285 Conn. 294, 302–303, 939 A.2d 572 (2008). We have reviewed the record and the arguments of the parties and conclude that the findings that the respondent violated rules 1.1, 1.3, and 1.4 **(a) (2), (3) and (4)** of the Rules of Professional Conduct are supported by the evidence in this case.

The respondent also challenges the finding that she violated rule 1.5 (a) of the Rules of Professional Conduct, which provides in relevant part: "A lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses. . . ." Rule 1.5 (a) also enumerates eight factors to be considered in determining the reasonableness of a fee.[12] "The commentary to rule 1.5 provides [however] that the factors specified in the rule . . . are not exclusive, and not all may be relevant given a particular instance. . . . [As] [w]e have explained [previously] courts . . . may rely on their general knowledge of what has occurred at the proceedings before them to supply evidence in support of an award of attorney's fees." **(Citation omitted; internal quotation marks omitted.)** *Francini* v. *Riggione*, 193 Conn. App. 321, 330–31, 219 A.3d 452 (2019).

The respondent argues that, in ordering her to return $3500 of the $5000 retainer that Recalde paid to her, the court "essentially entered a conclusion that [her] fees

[12]Rule 1.5 (a) of the Rules of Professional Conduct provides in relevant part: "The factors to be considered in determining the reasonableness of a fee include the following:

"(1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

"(2) The likelihood, if made known to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

"(3) The fee customarily charged in the locality for similar legal services;

"(4) The amount involved and the results obtained;

"(5) The time limitations imposed by the client or by the circumstances;

were unreasonable" but that "[t]here was no evidence offered to allow the court to consider [the enumerated factors] set forth in [rule] 1.5 (a)" of the Rules of Professional Conduct. She asserts that "[t]he only factor the court could have partially considered based on the evidence was factor (4) based on the $5000 retainer paid, the fee agreement setting the hourly rate at $375 an hour, and the results obtained . . . ."[13] She contends that "[t]here was no evidence offered concerning the reasonable value of the services provided to support the court's finding that the undersigned was only entitled to $1500." We disagree.

It is clear from the court's decision that the respondent's efforts in representing Recalde were minimal in that she never filed any motions on Recalde's behalf, despite numerous requests that she do so, and was rarely responsive to Recalde's communications to her. The court nevertheless awarded the respondent $1500 for her minimal efforts. Although the court did not expressly refer to the factors enumerated in rule 1.5 (a) of the Rules of Professional Conduct, it was not required to consider every factor because, as noted previously, not every factor is relevant in every case. The court properly relied on its general knowledge of what occurred throughout the respondent's representation of Recalde and determined that the respondent was entitled to be compensated for four hours of labor at the hourly rate of $375. On the basis of the record before us, we conclude that the court did not abuse its discretion in ordering the respondent to return the unearned portion of the retainer to Recalde.

---

"(6) The nature and length of the professional relationship with the client;

"(7) The experience, reputation, and ability of the lawyer or lawyers performing the services; and

"(8) Whether the fee is fixed or contingent."

[13] The respondent argues that the results obtained "included assistance with mediation, protection from a subpoena, the moving party withdrawal of a motion for contempt, assistance with the Department of Children and Families, assistance with educational issues, and preparing an application for emergency ex parte custody."

C

Finally, the respondent claims that the court erred in finding that she violated the Rules of Professional Conduct in her representation of Nusbaum. We disagree.

First, the respondent challenges the findings that she violated rules 3.3 (a) (1) and (3), (b) and (d) and 3.4 (2) of the Rules of Professional Conduct when she did not disclose, on the affidavit concerning children that accompanied the application for relief from abuse, that there was a pending divorce action or that orders affecting the children had been entered in that action. The respondent argues that "the statement of facts contained in the application for relief from abuse provided detailed information about the parties' pending divorce action to ensure [that] the court had all the necessary information before it when considering whether to grant or deny the ex parte relief requested." The respondent asserts: "The [application for relief from abuse] contained all [of] the accurate information from the divorce, including the title of the case, the jurisdiction where the case was pending, the docket number for the divorce and the accurate information concerning where and with who[m] the children [resided]. The affidavit was filed with the application for relief from abuse, and the third page of the application under the section for the 'statement of conditions for which you seek relief' specifically identified within the first two lines that [the parties were] going through a divorce that involved the custody and parenting access of the minor children, provided the judicial district and the docket number. The statement also provided information as to the current status of the proceedings and provided the date for the next hearing."

Although the record supports the respondent's recitation of the contents of the application for relief from abuse, her argument falls short in that she failed to disclose in any of her filings that there were orders issued in the divorce proceedings related to the custody of the children. Two orders had been issued in the divorce action relating to the custody of the children in that

the father was awarded sole legal and physical custody of the children and the mother's access had been "limited to therapeutic and/or supervised access" to the children. Neither the existence nor the substance of those orders is referenced in the application for relief from abuse or the accompanying affidavit concerning the children. We therefore agree with the reviewing committee that the respondent's conduct "constituted a lack of candor toward the tribunal by failing to disclose information about the custody and visitation orders in a pending Bridgeport action" in violation of rules 3.3 (a) (1) and (3), (b) and (d), 3.4 (2) and 8.4 (3) of the Rules of Professional Conduct.[14]

The respondent also argues that the court's findings that she violated rule 8.1 (2) of the Rules of Professional Conduct and Practice Book § 2-32 (a) (1) by failing to respond to the grievance filed against her "violates the governor's emergency executive COVID-19 orders suspending time frame limitations." The respondent admits that she did not respond to Nusbaum's grievance against her, but that she did not do so because she believed that the time limitations for responding to the filing of a grievance were suspended by the governor's "emergency COVID-19 executive orders." Specifically, the respondent argues: "The evidence offered to the trial court cannot establish that the [respondent] 'knowingly' failed to respond to the grievance complaint when the evidence before the court was that the [respondent] didn't respond based on the belief that the then existing emergency COVID-19 executive orders suspended the attorney disciplinary proceedings and time frame requirements." As the petitioner aptly notes, there was no such evidence presented to the trial court. Indeed, the respondent conceded during her testimony at the presentment hearing that she "absolutely did receive" a letter from the Statewide Grievance Committee indicating that she was required to respond to the grievance within

[14]The respondent has not challenged the finding that she violated rule 8.4 (4) of the Rules of Professional Conduct in that she engaged in conduct prejudicial to the administration of justice.

thirty days and she and her staff attempted to contact the committee to request additional time to respond. She testified that she called the committee and left a message, in which she "would have said something like, I know my time frame is coming up on the original letter. I'm backed up in my office. I'm having some health issues. I—I think I would have said I want to discuss, you know, whether or not I need to seek additional time." Also at the presentment hearing, in response to the petitioner's question of whether the respondent filed an answer to the grievance, the respondent answered: "No, this grievance complaint came in when I was home sick with COVID . . . ."

On the basis of the respondent's testimony at the presentment hearing, she seems to have abandoned her contention that the emergency executive orders suspended disciplinary hearings. Even if she has not, we need not address the substance of the emergency executive orders because, even if the time to respond to a grievance complaint had been suspended, any such suspension was not indefinite. The record reflects that the grievance hearing in this matter was held on March 1, 2023, more than two years after the grievance was filed, at which time the respondent still had not filed a response to the grievance. We therefore conclude that the court did not err in finding that the respondent violated rule 8.1 (2) of the Rules of Professional Conduct and Practice Book § 2-32 (a) (1) by failing to respond to the grievance filed against her.

The judgment is reversed only as to the determination that certain allegations of the first count of the presentment are entitled to absolute immunity under the litigation privilege and the case is remanded for consideration of those allegations on the merits; the judgment is affirmed in all other respects.

In this opinion the other judges concurred.